**FILED**

**MARCH 10, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**NORTHERN DISTRICT OF ILLINOIS**

**08 C 1407**

|  |  |  |
|---|---|---|
| NORTHWOODS WILDERNESS RECOVERY, THE MICHIGAN NATURE ASSOCIATION, DOOR COUNTY ENVIRONMENTAL COUNCIL, THE HABITAT EDUCATION CENTER, NATURAL RESOURCES DEFENSE COUNCIL, and THE CENTER FOR BIOLOGICAL DIVERSITY, | ) ) ) ) ) ) ) ) | Case No.: |
|  | ) |  |
| Plaintiffs, | ) ) | |
|  | ) | **COMPLAINT FOR DECLARATORY** |
| v. | ) | **AND INJUNCTIVE RELIEF** |
|  | ) | |
| DIRK KEMPTHORNE, Secretary of the Interior; UNITED STATES DEPARTMENT OF THE INTERIOR; H. DALE HALL, Director of the United States Fish and Wildlife Service; and UNITED STATES FISH AND WILDLIFE SERVICE, | ) ) ) ) ) ) ) | |
|  | ) | |
| Defendants. | ) | |

**JUDGE MANNING**
**MAGISTRATE JUDGE COX**

**INTRODUCTION**

1.      This case challenges the Secretary of the Interior's, the United States Department of the Interior's, the United States Fish and Wildlife Service's, and the Director of the United States Fish and Wildlife Service's (collectively, "the Service") exclusion of over 13,000 acres of national forest land in Michigan and Missouri from the final "critical habitat" designation for the Hine's emerald dragonfly in violation of the Endangered Species Act ("ESA"), 16 U.S.C. § 1531 *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq*.

2.      With brilliant green eyes and a dark metallic green thorax, the Hine's emerald dragonfly is one of the most imperiled dragonflies in the United States.  The Service listed the

dragonfly as "endangered" under the ESA in 1995. "Determination of Endangered Status for the Hine's Emerald Dragonfly (Somatochlora hineana)," 60 Fed. Reg. 5267 (Jan. 26, 1995) (codified at 50 C.F.R. pt. 17). On September 5, 2007, the Service issued its final critical habitat designation for the Hine's emerald dragonfly. "Designation of Critical Habitat for the Hine's Emerald Dragonfly," 72 Fed. Reg. 51102 (Sept. 5, 2007) (codified at 50 C.F.R. Pt. 17) ("Final Rule").

3.      Unfortunately, the Final Rule excludes over 13,000 acres of land – an area equal to the total amount of land *included* in the critical habitat designation – within the Hiawatha and Mark Twain National Forests ("National Forest land"). The Service excluded this land despite finding that it met the physical and biological criteria for Hine's emerald dragonfly critical habitat. Numerous legal defects plague the decision to exclude the National Forest land, including reliance on the paradoxical and legally flawed notion that the Forest Service would be more cooperative in protecting the dragonfly if the National Forest land were *not* designated as critical habitat.

4.      To redress this violation, Plaintiffs Northwoods Wilderness Recovery, the Michigan Nature Association, Door County Environmental Council, the Habitat Education Center, Natural Resources Defense Council, and the Center for Biological Diversity seek, *inter alia* (1) a declaration that the Defendants violated the ESA and APA by improperly excluding the National Forest land from the Final Rule; (2) an injunction directing the Defendants to issue a revised critical habitat designation within 90 days; (3) an order directing Defendants to maintain and enforce the current critical habitat designation pending the completion of a revised critical habitat designation; and (4) pending the completion of a revised critical habitat designation, an injunction preventing Defendants from issuing any incidental take permit, approval, biological

opinion, or concurrence pursuant to section 7 of the ESA, for any actions that may adversely

modify Hine's emerald dragonfly habitat on the improperly excluded land.

## JURISDICTION AND VENUE

5.    This court has jurisdiction over this action pursuant to 16 U.S.C. § 1540(c) and (g)

(action arising under Endangered Species Act citizen suit provision), 5 U.S.C. § 702 (judicial

review of agency action); and 28 U.S.C. § 1331 (federal question jurisdiction).

6.    The relief requested may be granted under 28 U.S.C. §§ 2201 and 2202 (declaratory

and injunctive relief), 16 U.S.C. § 1540(g) (ESA), and 5 U.S.C. §§ 701-706 (APA).

7.    Pursuant to section 11(g)(2)(C) of the ESA, 16 U.S.C. § 1540(g)(2)(C), Plaintiffs

provided the Secretary of the Interior and the United States Fish and Wildlife Service with

written notice of their intent to file this suit more than 60 days prior to the commencement of this

action.

8.    Defendants have not corrected their violations of the law in response to Plaintiffs'

written notice.

9.    Venue is proper in the District Court for the Northern District of Illinois pursuant to

16 U.S.C. § 1540(g)(3)(A) and 28 U.S.C. § 1391(e)(2) because a substantial part of the events

giving rise to the Plaintiffs' claims occurred in this district.  Specifically, the Final Rule at issue

was primarily authored by the Fish and Wildlife Service's Chicago, Illinois, Ecological Service

Field Office.  Final Rule, 72 Fed. Reg. at 51136.

## PARTIES

10.    Plaintiff Northwoods Wilderness Recovery ("Northwoods") is a non-profit

conservation organization based in Michigan's Upper Peninsula.   Founded in 1992,

Northwoods' mission is to protect and restore forests and wetlands of the North Woods, as well

as conserve habitat for endangered, threatened, and rare species. Northwoods' staff regularly visit, use, and enjoy Hine's emerald dragonfly habitat, including the Hiawatha National Forest habitat, and plan to continue visiting, using, and enjoying these areas in the future. Northwoods' staff derive scientific, recreational, conservation, aesthetic and other benefits from their use and enjoyment of these areas. In addition, Northwoods and its staff derive scientific, recreational, conservation, aesthetic, and other benefits from the existence of Hine's emerald dragonflies in the wild. These interests have been, are, and will be directly, adversely, and irreparably affected by the Defendants' violations of the law. Northwoods and its staff will continue to be prejudiced by Defendants' unlawful actions until and unless this Court provides the relief prayed for in this complaint.

11.    Plaintiff Michigan Nature Association ("MNA") is a non-profit membership corporation that works strategically to protect Michigan's most important natural habitats through acquisition and scientific stewardship. MNA owns and protects Hine's emerald dragonfly habitat in Mackinac and Alpena counties in Michigan. MNA's members reside in every county in Michigan, as well as in Missouri. MNA's members and staff regularly visit, use, and enjoy Hine's emerald dragonfly habitat, including, but not limited to, the Hiawatha National Forest habitat, and plan to continue visiting, using, and enjoying these areas in the future. MNA's members and staff derive scientific, recreational, conservation, aesthetic and other benefits from their use and enjoyment of these areas. In addition, MNA and its members and staff derive scientific, recreational, conservation, aesthetic, and other benefits from the existence of Hine's emerald dragonflies in the wild. These interests have been, are, and will be directly, adversely, and irreparably affected by the Defendants' violations of the law. MNA and its

4

members and staff will continue to be prejudiced by Defendants' unlawful actions until and unless this Court provides the relief prayed for in this complaint.

12.     Plaintiff Door County Environmental Council ("DCEC") is a non-profit membership corporation founded in 1970 and organized under the laws of the state of Wisconsin, maintaining an office in Sturgeon Bay, Wisconsin.  DCEC has 550 members throughout Wisconsin, consisting of families and individuals.  DCEC's stated purposes include preservation, protection, and defense of Door County's ecological biodiversity and unique environmental features.  DCEC has been active in efforts to protect endangered species, including efforts that led to the listing of the Hine's emerald dragonfly as a Wisconsin endangered species and as a federal endangered species under the ESA.  Several of DCEC's members and officers regularly visit, use and enjoy Hine's emerald dragonfly habitat, including the Hiawatha National Forest habitat, and plan to continue visiting, using, and enjoying these areas in the future.  DCEC's members and officers derive scientific, recreational, conservation, aesthetic, and other benefits from their use and enjoyment of these areas.  DCEC and its members and officers also derive scientific, recreational, conservation, aesthetic, and other benefits from the existence of Hine's emerald dragonflies in the wild.  These interests have been, are, and will be directly, adversely, and irreparably affected by the Defendants' violations of the law.  DCEC and its officers and staff will continue to be prejudiced by Defendants' unlawful actions until and unless this Court provides the relief prayed for in this complaint.

13.     Plaintiff Habitat Education Center ("HEC") is an organization based in Madison, Wisconsin and is a project of the Green Onion Resource Center, a non-profit corporation based in Ashland, Wisconsin.  HEC's mission is to improve the health and viability of wildlife habitats through public education, scientific commentary, enforcement of existing laws, grassroots

organizing and litigation.   HEC's staff visit, use, and enjoy Hine's emerald dragonfly habitat, including, but not limited to, the Hiawatha National Forest habitat, and plan to continue visiting, using, and enjoying these areas in the future.   HEC's staff derive scientific, recreational, conservation, aesthetic, and other benefits from their use and enjoyment of these areas.   In addition, HEC and its staff derive scientific, recreational, conservation, aesthetic and other benefits from the existence of Hine's emerald dragonflies in the wild.   These interests have been, are, and will be directly, adversely, and irreparably affected by the Defendants' violations of the law.   HEC and its staff will continue to be prejudiced by Defendants' unlawful actions until and unless this Court provides the relief prayed for in this complaint.

14.    Plaintiff Natural Resources Defense Council, Inc. ("NRDC") is a not-for-profit membership corporation founded in 1970 and organized under the laws of the State of New York.   NRDC maintains offices in New York, New York; Washington, D.C.; Chicago, Illinois; San Francisco and Santa Monica, California; and Beijing, China.   NRDC has more than 420,000 members nationwide, with over 12,000 members in Michigan and over 5,000 members in Missouri.   NRDC's purposes include the preservation, protection, and defense of our nation's biodiversity and environment.   NRDC has long been active in efforts to protect endangered species.   NRDC members regularly visit, use, and enjoy Hine's emerald dragonfly habitat, including, but not limited to, the National Forest land, and plan to continue visiting, using, and enjoying these areas in the future.   NRDC members derive scientific, recreational, conservation, aesthetic, and other benefits from their use and enjoyment of these areas.   NRDC and its members and staff also derive scientific, recreational, conservation, aesthetic and other benefits from the existence of Hine's emerald dragonflies in the wild.   These interests have been, are, and will be directly, adversely, and irreparably affected by the Defendants' violations of the law.

NRDC and its members and staff will continue to be prejudiced by Defendants' unlawful actions until and unless this Court provides the relief prayed for in this complaint

15.     Plaintiff Center for Biological Diversity (the "Center") is a non-profit corporation dedicated to the preservation, protection, and restoration of biodiversity, native species, and ecosystems. The Center has over 40,000 members worldwide. The Center has offices in Tucson and Phoenix, Arizona; Silver City, New Mexico; Washington, D.C.; San Francisco, Los Angeles, San Diego, and Joshua Tree, California; Portland, Oregon, and Chicago, Illinois. The Center's members and staff regularly visit, use, and enjoy Hine's emerald dragonfly habitat, including, but not limited to, the National Forest land, and plan to continue visiting, using, and enjoying these areas in the future. The Center's members and staff derive scientific, recreational, conservation, aesthetic and other benefits from their use and enjoyment of these areas. In addition, the Center and its members and staff derive scientific, recreational, conservation, aesthetic, and other benefits from the existence of Hine's emerald dragonflies in the wild. These interests have been, are, and will be directly, adversely, and irreparably affected by the Defendants' violations of the law. The Center and its members and staff will continue to be prejudiced by Defendants' unlawful actions until and unless this Court provides the relief prayed for in this complaint.

16.     Defendant Dirk Kempthorne is sued in his official capacity as the Secretary of the Interior. The Secretary of the Interior ("Secretary") is the federal official responsible for complying with the statutory requirements of the ESA for terrestrial species, including the listing and recovery of the Hine's emerald dragonfly and the designation of its critical habitat.

17.     Defendant H. Dale Hall is sued in his official capacity as the Director of the United States Fish and Wildlife Service. As Director, and through delegation of authority from the

Secretary, Mr. Hall is the Fish and Wildlife Service official responsible for complying with and implementing the ESA, including the designation of critical habitat for the Hine's emerald dragonfly.

18.     Defendant United States Department of the Interior is an agency of the United States government, and includes Defendant United States Fish and Wildlife Service.  Among other functions, the Department of the Interior is responsible for the administration of the ESA, and is legally responsible for the designation of critical habitat for terrestrial species, including the Hine's emerald dragonfly.

19.     Defendant United States Fish and Wildlife Service is an agency of the United States government, within and under the jurisdiction of the Department of the Interior.  Through delegation of authority from the Secretary, the Fish and Wildlife Service administers and implements the ESA, and is legally responsible for the designation of critical habitat for the Hine's emerald dragonfly.

## LEGAL BACKGROUND

20.     The ESA is a federal statute enacted to conserve species in danger of extinction and the ecosystems upon which they depend.  16 U.S.C. § 1531(b).  The ESA is "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation."  Tennessee Valley Authority v. Hill, 437 U.S. 153, 180 (1978).  The Supreme Court's review of the ESA's "language, history, and structure" convinced the Court "beyond doubt that Congress intended endangered species to be afforded the highest of priorities."  Id. at 174.  As the Court found, "[t]he plain intent of Congress in enacting this statute was to halt and reverse the trend toward species extinction, whatever the cost."  Id. at 184

21.    Among the purposes of the ESA are "to provide a means whereby the ecosystems

upon which endangered species and threatened species depend may be conserved, [and] to

provide a program for the conservation of such endangered species and threatened species . . ."

16 U.S.C. § 1531(b).  To this end, section 4 of the ESA requires that the Secretary protect such

species by listing them as either "threatened" or "endangered."  An endangered species is one "in

danger of extinction throughout all or a significant portion of its range."  16 U.S.C. § 1532(6).

22.    Additionally, except in narrow circumstances, the ESA requires the Secretary to

designate "critical habitat" for each species listed as threatened or endangered at the time the

species is listed.  16 U.S.C. § 1533.

23.    The ESA defines "critical habitat" as:

(i)    the specific areas within the geographical area occupied by the species at the

time it was listed in accordance with the provisions of section 1533 of this

title, on which are found those physical or biological features (I) essential to

the conservation of the species and (II) which may require special

management considerations or protection; and

(ii)    specific areas outside the geographical area occupied by the species at the

time it is listed in accordance with the provisions of section 1533 of this title,

upon a determination by the Secretary that such areas are essential for the

conservation of the species.

16 U.S.C. § 1532(5)(A).

24.    "Conserve" and "conservation," as defined in the ESA, "mean to use and the use of

all methods and procedures which are necessary to bring any endangered species or threatened

species to the point at which the measures provided [by the ESA] are no longer necessary." 16 U.S.C. § 1532(3).

25.    Section 4(b)(2) of the ESA requires the Secretary to make critical habitat designations "on the basis of the best scientific data available and after taking into consideration the economic impact, the impact on national security, and any other relevant impact, of specifying any particular area as critical habitat." 16 U.S.C. § 1533(b)(2). An area may be excluded from critical habitat if the Secretary "determines that the benefits of such exclusion outweigh the benefits of specifying such area as part of the critical habitat, unless he determines, based on the best scientific and commercial data available, that the failure to designate such area as critical habitat will result in the extinction of the species concerned." Id.

26.    The Secretary has delegated the authority to designate critical habitat and develop and implement recovery plans to the United States Fish and Wildlife Service.

27.    Section 7 of the ESA mandates that all federal agencies "insure," through consultation with the Service, that their actions are not likely to either "jeopardize the continued existence" of an endangered species or result in the "destruction or adverse modification" of its designated critical habitat. 16 U.S.C. § 1536(a)(2). This is known as the "section 7 consultation process."

28.    As both Congress and numerous federal courts have recognized, the designation of critical habitat, and its protection through the section 7 consultation process, is central to the ESA's statutory scheme. In creating the ESA, "Congress started from the finding that '[t]he two major causes of extinction are hunting and destruction of natural habitat'" and "was informed that the greatest [cause] was destruction of natural habitats." Tennessee Valley Authority, 437 U.S. at 179 (citing legislative history). Further, "the ESA was enacted not merely to forestall

the extinction of species … but to allow a species to recover to the point where it may be

delisted." Gifford Pinchot Task Force v. U.S. Fish and Wildlife Service, 378 F.3d 1059, 1070

(9th Cir. 2004).  Critical habitat designation and protection is essential to the government's

successful implementation of these dual goals of the ESA.  See id.  ("[T]he purpose of

establishing 'critical habitat' is for the government to carve out territory that is not only

necessary for the species' survival but also essential for the species' recovery").  As Congress

recognized: "[T]he ultimate effectiveness of the Endangered Species Act will depend on the

designation of critical habitat."  H.R. Rep. No. 94-887, at 3 (1976).

29.    The APA, 5 U.S.C. §§ 701-706, provides the standard for judicial review of final

agency action.  Under the authority of the APA, a reviewing court must "hold unlawful and set

aside agency action, findings, and conclusions" found to be "arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law" or "without observance of procedure

required by law," 5 U.S.C. §§ 706(2)(A) and (D).  A reviewing court must also "compel agency

action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).

## FACTUAL BACKGROUND

30.    The Hine's emerald dragonfly is one of the most endangered dragonflies in the

United States.  Adults are 2-3 inches long, with brilliant green eyes, and are distinguished from

other emerald dragonflies by a dark metallic green thorax.  Hine's emerald dragonflies are

currently known to exist in small pockets within Illinois, Wisconsin, Michigan, and Missouri.

The Michigan and Missouri populations are the most recently discovered and least well-

documented.  "Proposed Designation of Critical Habitat for the Hine's Emerald Dragonfly," 71

Fed. Reg. 42442, at 42444 (July 26, 2006) ("Proposed Rule"); "Hine's Emerald Dragonfly

(*Somatochlora hineana* Williamson) Recovery Plan," at iii (Dec. 27, 2001) ("Recovery Plan") (available at http://www.fws.gov/midwest/Endangered/insects/hed/hed-recplan.html).

31.    Hine's emerald dragonfly habitat is restricted to wetlands "characterized by thin soils over dolomite bedrock, with marshes, seeps, and sedge meadows."  Recovery Plan, at 1. Fragmentation and disruption of suitable habitat are the primary threats to the species.  In addition to disruption and fragmentation of habitat through logging, road development, and other direct disruptions to suitable habitat, "the species is vulnerable to loss of habitat caused by off-site hydrology alterations and groundwatershed development affecting the groundwater-fed seeps and springs."  Id.

32.    The Hine's emerald dragonfly was listed as endangered under the ESA on January 26, 1995, based on its limited distribution and need for protection.  60 Fed. Reg. at 5267; Recovery Plan, at 1.

33.    Although required by section 4 of the ESA to designate critical habitat for the Hine's emerald dragonfly at the time of listing, 16 U.S.C. § 1533(a)(3)(A), Defendants failed to do so. On February 4, 2004, the Center, Northwoods, MNA, HEC, and DCEC filed suit to compel Defendants to designate critical habitat for the Hine's emerald dragonfly.  Center for Biological Diversity v. Norton, No. 04-00156 (D.D.C., filed Feb. 4, 2004).  Pursuant to a settlement agreement, the Service issued a proposed designation of critical habitat for the Hine's emerald dragonfly on July 26, 2006.  Proposed Rule, 71 Fed. Reg. at 42442, 42444.

34.    In the Proposed Rule, the Service defined the physical and biological features it found to be essential to the conservation of the species and, based on those features, identified 27,689 acres of land that meet the definition of critical habitat.  The land was broken out into 49 units in Michigan, Missouri, Wisconsin and Illinois.  Proposed Rule, 71 Fed. Reg. at 42449-51.

35.     However, the Service also proposed to exclude 14,269 of these 27,689 acres from the final critical habitat designation, leaving only 13,420 acres (less than half of the qualified land) as critical habitat.  The proposed exclusions consisted of *all* the units in Missouri and two of the units in Michigan (Michigan Units 1 and 2).  These excluded Michigan Units contained the entire identified dragonfly critical habitat in the Hiawatha National Forest, in the Upper Peninsula of Michigan.  The excluded Missouri units contained all the identified dragonfly critical habitat in the Mark Twain National Forest.  Proposed Rule, 71 Fed. Reg. at 42450-51. All habitat qualifying as Hine's emerald dragonfly critical habitat on National Forests in the dragonfly's range was thus proposed to be excluded from the final designation.

36.     The Proposed Rule asserted that these exclusions were justified because the benefits of excluding habitat on these National Forests outweighed the benefits of designating them as critical habitat.

37.     Plaintiffs the Center, Northwoods, MNA, DCEC, and HEC submitted written comments on the Proposed Rule, including comments opposing the proposed exclusion of the National Forest land.  *See* Letter from John Buse, Center for Biological Diversity, to John Rogner, Field Supervisor, U.S. Fish and Wildlife Service at 10 (Sept. 25, 2006).

38.     On March 20, 2007 the Service issued a notice of the availability of a revised proposed critical habitat designation for the dragonfly, as well as a draft economic analysis of the designation.  72 Fed. Reg. 13061 (Mar. 20, 2007).

39.     Plaintiffs the Center, NRDC, and Northwoods submitted further written comments on the Service's draft critical habitat designation and economic analysis, also opposing the proposed exclusions.  *See* Letter from John Buse, Center for Biological Diversity, to John Rogner, Field Supervisor, U.S. Fish and Wildlife Service, at 2-4 (July 2, 2007)

40.    The Service issued its final designation of critical habitat for the Hine's emerald dragonfly ("Final Rule") on September 5, 2007. Final Rule, 72 Fed. Reg. 51102.  Other than the creation of an additional 147-acre critical habitat unit in Wisconsin and an alteration to the acreage estimation for one of the other Wisconsin units (reducing the previous acreage estimate by 346 acres), the Final Rule's designations and exclusions of critical habitat matched the proposed designations and exclusions in the Proposed Rule. Id. at 51114, 51117.

41.    Like the Proposed Rule, the Final Rule acknowledges that over 13,000 acres of land in the Hiawatha and Mark Twain National Forests (in Michigan units 1 and 2 and Missouri units 1, 2, 3, 5, 7, 8, 11, 21, 23, 24, 25, and 26) meet the criteria for Hine's emerald dragonfly critical habitat.  Id. at 51117, 51127.

42.    However, in the Final Rule, the Defendants exclude from the dragonfly's critical habitat designation all of Michigan units 1 and 2 (covering all of the eligible Hiawatha National Forest land) and all of the Missouri units (including all of the eligible Mark Twain National Forest land).  The acreage of excluded National Forest land is roughly equivalent to the total acreage of land ultimately designated as critical habitat for the Hine's emerald dragonfly.  The exclusion of National Forest land thus cut the acreage of the dragonfly's designated critical habitat in half.  Id. at 51117-18.

43.    Critical habitat designations must be made based on the best scientific data available and take into consideration the economic, national security, and other relevant impacts of designation.  16 U.S.C. § 1533(b)(2); ESA § 4(b)(2).  The Service "may exclude any area from critical habitat if [it] determines that the benefits of such exclusion outweigh the benefits of specifying such area as part of the critical habitat."  Id.  The Service's exclusion of National Forest land from the dragonfly's critical habitat violates these mandatory provisions of the ESA

and constitutes agency action that is arbitrary and capricious, contrary to law, and without observance of procedure required by law.

44.     The Final Rule identifies only two purported "benefits" of excluding the National Forest land from the dragonfly's critical habitat. First, the Final Rule states that exclusion would "enhance the cooperative working relationship with the Forest Service by focusing on activities that are designed to protect and recover Hine's emerald dragonfly." 72 Fed. Reg. at 51127, 28. This purported "benefit" is vague, upon information and belief unsupported by the administrative record, and, in any event, not legally cognizable. The ESA requires all federal agencies, including the U.S. Forest Service to fully cooperate with the Secretary of the Interior and to "utilize their authorities in furtherance of the purposes of [the ESA] by carrying out programs for the conservation of endangered species." 16 U.S.C. § 1536(a)(1). Thus, the Forest Service's full cooperation with the Service in carrying out the purposes of the ESA and engaging in conservation activities is required under the Act. This pre-existing duty may not be turned into a benefit of exclusion. Indeed, the Service's rationale for exclusion – that Forest Service cooperation will be more fulsome if the Service does not designate critical habitat on national forest land – assumes in advance that the Forest Service will not perform its Congressionally-mandated duties unless the Service refrains from designating Hine's emerald dragonfly critical habit on the National Forest land. This is not a tenable or legally cognizable position. Thus, the Service's identification of and reliance on this "benefit of exclusion" violates the non-discretionary requirements of sections 4(a)(3)(A) and 4(b)(2) of the ESA, 16 U.S.C. §§ 1533(a)(3)(A) and (b)(2), and constitutes agency action that is arbitrary and capricious, contrary to law, and without observance of procedure required by law.

45.     The second purported benefit of exclusion, which is only stated as a benefit of excluding the Hiawatha National Forest, is that exclusion would avoid the, admittedly "not significant," additional costs (in staff time and money) of designating and consulting on critical habitat.  Final Rule, 72 Fed. Reg. at 51127.  This purported benefit of exclusion, beyond being insignificant as recognized by the Service, is practically non-existent.

46.     First, the Final Rule fails to explain how there are any additional administrative costs associated with the process of "designating" critical habitat, as opposed to excluding it.  The Service has already performed all of the work necessary to designate critical habitat on the excluded areas.

47.     Second, section 7 consultations are already required whenever an agency action "may affect" the Hine's emerald dragonfly, regardless of the presence of designated critical habitat.  50 C.F.R. § 402.14.  The presence of critical habitat, therefore, leads to no additional or stand-alone consultation costs, except in limited circumstances, such as when critical habitat has been unoccupied for a long period of time.  At the same time, the presence of critical habitat leads to unique substantive protections for the dragonfly in the consultation process.  The ESA prohibits agency action that would likely either "jeopardize the continued existence" of a listed species *or* result in the "destruction or adverse modification" of its designated critical habitat.  16 U.S.C. § 1536(a)(2).  The absence of critical habitat removes the "adverse modification" prong from the consultation standard, leaving only the "jeopardy" prong.  Courts have repeatedly rejected the Service's attempts to equate these two prongs, noting that the prohibition on "adverse modification" is aimed at promoting the recovery of the species, and is distinct from the "jeopardy" standard.  *See e.g.*, Gifford Pinchot Task Force, 378 F.3d at 1070-71 (9th Cir. 2004).

Thus, for no additional administrative cost, the presence of critical habitat leads to a conservation benefit for the species, namely the prohibition on destruction or adverse modification of habitat.

48.    The Final Rule's assessment of the benefits of critical habitat designation on the National Forest lands is also flawed.  Describing these benefits, the Service states that any benefits would be "diminished and limited" because the existing Hiawatha and Mark Twain Forest Plans already provide protection of Hine's emerald dragonfly habitat and because, even absent critical habitat designation, federal agencies are required, under section 7 of the ESA, to consult with the Service on actions that "may affect" the dragonfly to ensure that those actions do not jeopardize the species' existence.  Final Rule, 72 Fed. Reg. at 51126-28.

49.    The Service is wrong to discount the benefits of designation because section 7 consultations are required even absent critical habitat.  As discussed above, while, in occupied habitat, section 7 consultations are indeed required absent a critical habitat designation, the presence of critical habitat provides unique substantive protections in the consultation process. By failing to take into account the enhanced protection and conservation benefits for the species that the presence of critical habitat brings to the section 7 consultation process, the Service violated the non-discretionary requirements of the ESA.

50.    The Final Rule also incorrectly states that critical habitat designation will provide little or no additional protection beyond that provided by the Hiawatha and Mark Twain Forest Plans.  Critical habitat designation would not prevent the Forest Service from continuing to carry out any measures in these Plans that would protect the dragonfly or promote its recovery. Critical habitat designation, however, would add significant additional protections.   For instance, neither of the Forest Plans prohibits all adverse modification of critical habitat and both

plans must be revised every ten to fifteen years pursuant to the National Forest Management Act, leaving future protections for the Hine's emerald dragonfly's habitat uncertain.

51.     In determining that the benefits of excluding the National Forest land outweighed the benefits of designating it as critical habitat for the Hine's emerald dragonfly, the Service relied on impermissible factors, failed to consider relevant factors, and irrationally assessed the factors it did consider.  Thus, the Service failed to perform its non-discretionary duties under section 4 of the ESA and acted in a manner that is arbitrary, capricious, not in accordance with law, and without procedure required by law.  16 U.S.C. §§ 1533(a)(3)(A), 1533(b)(2) and 1540(g)(1)(C); 5 U.S.C. § 706(2).

## CLAIMS FOR RELIEF

### First Claim for Relief

### Failure to Designate Critical Habitat within the Hiawatha National Forest

(Endangered Species Act and Administrative Procedures Act)

52.     Each and every allegation set forth in paragraphs 1 through 51 is incorporated herein by reference.

53.     In excluding Michigan Units 1 and 2 (land within the Hiawatha National Forest) from Hine's emerald dragonfly critical habitat, Defendants relied on impermissible and legally non-cognizable factors, failed to consider relevant factors, and irrationally assessed the factors it did consider, violating sections 4(a)(3)(A) and 4(b)(2) of the ESA, 16 U.S.C. §§ 1533(a)(3)(A) and 1533(b)(2), and the APA, 5 U.S.C. §§ 706(2)(A) and (D).

54.     For each of the above reasons, and others, Defendants failed to perform their non-discretionary duties as required by the ESA, and have acted in a manner that is arbitrary,

capricious, not in accordance with law, and without procedure required by law.  16 U.S.C. § 1540(g); 5 U.S.C. §§ 706(2)(A) and (D).

Second Claim for Relief

Failure to Designate Critical Habitat within the Mark Twain National Forest

(Endangered Species Act and Administrative Procedures Act)

55.    Each and every allegation set forth in paragraphs 1 through 54 is incorporated herein by reference.

56.    In excluding land within the Mark Twain National Forest from Hine's emerald dragonfly critical habitat, Defendants relied on impermissible and legally non-cognizable factors, failed to consider relevant factors, and irrationally assessed the factors it did consider, violating sections 4(a)(3)(A) and 4(b)(2) of the ESA, 16 U.S.C. §§ 1533(a)(3)(A) and 1533(b)(2), and the APA, 5 U.S.C. §§ 706(2)(A) and (D).

57.    For each of the above reasons, and others, Defendants failed to perform their non-discretionary duties as required by the ESA, and have acted in a manner that is arbitrary, capricious, not in accordance with law, and without procedure required by law.  16 U.S.C. § 1540(g); 5 U.S.C. §§ 706(2)(A) and (D).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment providing for the following relief:

1.    Declare that Defendants violated the ESA and the APA by issuing a designation of critical habitat for the Hine's emerald dragonfly that improperly excludes land within the Hiawatha and Mark Twain National Forests;

2.      Order the Defendants to issue a revised proposed critical habitat designation for the Hine's emerald dragonfly, which corrects these errors and otherwise provides for the conservation of the species, within 90 days of judgment and to publish such finding in the Federal Register;

3.      Order that the Service issue a new final critical habitat designation for the Hine's emerald dragonfly within one year of judgment and publish notice thereof in the Federal Register;

4.      Order that Defendants maintain and enforce the current critical habitat designation pending the completion of an adequate revised critical habitat designation;

5.      Pending the completion of an adequate critical habitat designation, enjoin Defendants from issuing any incidental take permit, approval, biological opinion, or concurrence pursuant to section 7 of the ESA, for any actions that may adversely modify Hine's emerald dragonfly habitat in Michigan units 1 and 2 and the National Forest portions of the Missouri units, which were improperly excluded from designation as critical habitat in the Final Rule by Defendants pursuant to ESA section 4(b)(2), 16 U.S.C. § 1533(b)(2).

6.      Retain jurisdiction over this matter until such time as the defendants have complied fully with the requirements of these requirements;

7.      Grant Plaintiffs their fees, costs, expenses and disbursements, including reasonable attorneys' fees; and

8.      Grant Plaintiffs such additional and further relief as the Court deems just and proper.

Dated:        March 10, 2008

Respectfully submitted,

By:    _____

Ann Alexander (N.D. Ill. Bar No. 6278919)
NATURAL RESOURCES DEFENSE COUNCIL
101 N. Wacker Drive, Suite 609
Chicago, IL 60606-9997
Telephone: (312) 780-7427
Fax: (312) 663-9920
Email: aalexander@nrdc.org

Aaron Bloom
NATURAL RESOURCES DEFENSE COUNCIL
40 West 20th Street
New York, NY 10011
Telephone: (212) 727-4417
Fax: (212) 727-1773
Email: abloom@nrdc.org

John Buse
CENTER FOR BIOLOGICAL DIVERSITY
5656 S. Dorchester Avenue No. 3
Chicago, IL 60637
Telephone: (323) 533-4416
Fax: (610) 885-2187
Email: jbuse@biologicaldiversity.org

Attorneys for Plaintiffs