**IN THE UNITED STATES DISTRICT COURT FOR THE**

**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| NORTHWOODS WILDERNESS RECOVERY, *et al.*,<br><br>  Plaintiffs,<br><br>  v.<br><br>DIRK KEMPTHORNE, *et al.*,<br><br>  Defendants. | )<br>)<br>)<br>) Case No.: 08-cv-1407 (BMM) (SEC)<br>)<br>) **MEMORANDUM OF LAW IN SUPPORT**<br>) **OF VENUE IN THE NORTHERN**<br>) **DISTRICT OF ILLINOIS**<br>)<br>)<br>)<br>) |

Pursuant to this Court's minute entries dated March 12 and May 23, 2008, Plaintiffs submit the following Memorandum of Law setting forth the basis for venue in the Northern District of Illinois.

## INTRODUCTION

Venue is proper in the Northern District of Illinois because a substantial part of the events giving rise to Plaintiffs' claims occurred in this district.

This case challenges Defendants' decision to exclude all national forest land in Missouri and Michigan when designating "critical habitat" for the Hine's emerald dragonfly under the Endangered Species Act ("ESA"), 16 U.S.C. § 1531 *et seq*. While the excluded land is not located in the Northern District of Illinois, the challenged critical habitat designation was authored here and the decision-making process – including soliciting and receiving public comments – took place in this district. Further, Hine's emerald dragonflies themselves are found in the Northern District of Illinois and

1

dragonfly habitat in the Northern District has been designated as critical by Defendants. As a consequence, significant effects of the Defendants' violation of the ESA will be felt in this district. Indeed, Defendants do not dispute that the Northern District of Illinois is a proper venue in which to adjudicate this matter.

## FACTUAL BACKGROUND

The Hine's emerald dragonfly is one of the most endangered dragonflies in the United States. Complaint ("Cmplt.") ¶ 30. Adults are 2-3 inches long, with brilliant green eyes and a dark metallic green thorax. Id. The species is currently known to exist only in small pockets in Illinois, Wisconsin, Michigan, and Missouri. Id. Hine's emerald dragonfly habitat is restricted to specific types of dolomite bedrock wetlands with thin soils, marshes, seeps, and sedge meadows. Cmplt. ¶ 31. Because of its specific habitat needs, the Hine's emerald dragonfly is vulnerable to habitat disruptions from logging, road development, and any activity that affects the hydrology of the groundwater-fed seeps and springs on which it relies. Id.

The ESA is a federal statute enacted to conserve species in danger of extinction and the ecosystems upon which they depend. 16 U.S.C. § 1531(b). Section 4 of the ESA requires the Secretary of the Interior to protect such species by listing them as either "threatened" or "endangered" and to designate "critical habitat" for each listed species. 16 U.S.C. § 1533. Critical habitat includes specific areas that are essential to the conservation of the species. 16 U.S.C. § 1532(5). Critical habitat designations must be made "on the basis of the best scientific data available" and after taking into account any relevant impacts. 16 U.S.C. § 1533(b)(2). An otherwise eligible area may be excluded

from critical habitat if the Secretary "determines that the benefits of such exclusion outweigh the benefits of specifying such area as part of the critical habitat." Id.

In this case, the U.S. Fish and Wildlife Service (the "Service") listed the Hine's emerald dragonfly as "endangered" under the ESA in 1995. Cmplt. ¶¶ 3, 32; 60 Fed. Reg. 5267 (Jan. 26 1995) (codified at 50 C.F.R. pt. 17). At that time, the dragonfly was only known to exist in Illinois and Wisconsin. 60 Fed. Reg. at 5268. The Illinois sites were located in Cook, Will, and DuPage Counties – all within the Northern District of Illinois. Id.

In 2006, the Service formally proposed designating critical habitat for the dragonfly. See "Proposed Designation of Critical Habitat for the Hine's Emerald Dragonfly" ("Proposed Rule"), 71 Fed. Reg. 42442 (July 26, 2006); Cmplt. ¶ 33. In the Proposed Rule, the Service identified nearly twenty-eight thousand acres of land in Illinois, Wisconsin, Michigan, and Missouri that met the definition of critical habitat, including three thousand acres of land located in Cook, Will, and DuPage counties in Illinois and over thirteen thousand acres of land in the Hiawatha National Forest in Michigan and in the Mark Twain National Forest in Missouri ("National Forest land"). Proposed Rule, 71 Fed. Reg. at 42449-56, 42470-72; Cmplt. ¶¶ 34, 35, 41.

However, the rule also proposed to exclude all of the National Forest land the Service identified from the dragonfly's final critical habitat designation because, the Service argued, the benefits of excluding the National Forest land outweighed the benefits of designating it as critical habitat. Proposed Rule, 71 Fed. Reg. at 42462, 42465; Cmplt. ¶ 36.

3

The Service's Chicago Ecological Services Field Office ("Chicago Field Office") was the primary author of the Proposed Rule. Proposed Rule, 71 Fed. Reg. at 42468. As part of the required public comment processes, the Service noted that "[w]e specifically solicit comment on the inclusion or exclusion" of habitat in the Hiawatha and Mark Twain National Forests, including on "[w]hether the benefit [sic] of exclusion in any particular area outweigh the benefits of inclusion under Section 4(b)(2) of the Act." Id. at 42442, 42443.

Of importance here, the Proposed Rule informed the public to submit any comments to John Rogner, Field Supervisor of the Chicago Field Office, at a Chicago address, and to contact Mr. Rogner at that address for further information. Id. at 42442. John Buse, an attorney with the Center for Biological Diversity, writing from his Chicago office, submitted comments on the Proposed Rule to Mr. Rogner on behalf of the Plaintiffs in this case, including comments opposing the proposed exclusions of National Forest land. Cmplt. ¶¶ 37, 39; June 5, 2008 "Declaration of Aaron M. Bloom in Support of Venue in the Northern District of Illinois" ("Bloom Decl."), Exhibits A and B (Sept. 25, 2006 and July 2, 2007 letters from John Buse to John Rogner).

Further reinforcing the central role the Chicago Field office played in designating critical habitat for the dragonfly, the sole informational meeting and public hearing regarding the Proposed Rule took place in Romeoville, Illinois, which is within the Northern District of Illinois, on August 15, 2006. See "Designation of Critical Habitat for the Hine's Emerald Dragonfly," 72 Fed. Reg. 51102, at 51102 (Sept. 5, 2007) ("Final Rule"); see also Proposed Rule, 71 Fed. Reg. at 42442.

On March 20, 2007, the Service issued a notice of the availability of a draft economic analysis of the Proposed Rule. 72 Fed. Reg. 13061. The economic analysis attributed the vast majority (over 90%) of the projected economic impacts of the dragonfly's endangered status and its critical habitat to the Illinois units in Cook, Will, and DuPage counties. See Bloom Decl., Exhibit C (excerpts of Draft Economic Analysis).

The Service issued its final designation of critical habitat for the Hine's emerald dragonfly on September 5, 2007. Final Rule, 72 Fed. Reg. 51102; Cmplt. ¶ 40. As indicated in both the Proposed and the Final Rule, and alleged in Plaintiffs' Complaint, the Service's Chicago Field Office was the primary author of the critical habitat designation for the Hine's emerald dragonfly. Final Rule, 72 Fed. Reg. at 51136; Proposed Rule, 71 Fed. Reg. at 42468; Cmplt. ¶ 9.

Consistent with the Proposed Rule, the Final Rule designates as critical habitat 2,995 acres of Illinois land located in Cook, Will, and DuPage counties. Final Rule, 72 Fed. Reg. at 51118-19, 51138-40. All of the Illinois units were known to be occupied by the dragonfly when it was listed as endangered in 1995, and, as of the Final Rule, repeated adult and larval observations of the species were reported for most of the Illinois units. Id. at 51118-19. Unfortunately, the Final Rule excluded all of the habitat identified by the proposed rule in the Hiawatha and Mark Twain national forests from the dragonfly's final critical habitat designation. Id. at 51125. Once again, the Rule instructed the public to contact Mr. Rogner, at the Chicago Field Office, for a list of references cited in the Final Rule or for further information. Id. at 51102, 36.

**ARGUMENT**

**I.     Legal Standard**

In this case, both the general federal venue statute, 28 U.S.C. § 1391, and the ESA's venue provision, 16 U.S.C. § 1540(g)(3)(A), may be used to support venue in the Northern District of Illinois.

   A.     General Venue Statute

The general federal venue provision for actions against officers or agencies of the United States, 28 U.S.C. § 1391(e), applies to this case.  Because none of the Plaintiffs or Defendants officially resides, for purposes of determining venue, in this district,[1] the applicable provision is § 1391(e)(2), which allows an action to be brought in any judicial district in which "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." This provision mirrors the language of the other "transactional" venue provisions in 28 U.S.C. §§ 1391(a)(2) and (b)(2), all of which reflect the liberalizing 1990 amendments to the venue statute.

Prior to 1990, the "transactional" venue provisions allowed for venue in the district "in which the claim arose."  The Supreme Court interpreted this provision to provide for venue only in the single district in which the claim could best be said to arise (except in unusual cases where no single district predominated).  Leroy v. Great Western United Corp., 443 U.S. 173, 184-85 (1979).  In 1990, Congress amended the transactional venue provision in order to allow claims to be brought not just in the district where a

---

[1] Two of the plaintiffs, the Natural Resources Defense Council and the Center for Biological Diversity, have offices in Chicago, but neither is incorporated in this district. Cmplt. ¶¶ 14, 15.

6

claim arose, but in any district where a substantial portion of the events giving rise to the claim occurred.  In part, this amendment was meant to reduce litigation over the propriety of venue.  See H.R. Rep. No. 101-734 (1990), *as reprinted in* 1990 U.S.C.C.A.N. 6860, 6869 ("The great advantage of referring to the place where things happened or where property is located is that it avoids the litigation breeding phrase 'in which the claim arose.'  It also avoids the problem created by the frequent cases in which substantial parts of the underlying events have occurred in several districts.").

As this Court has noted, the test under the revised venue statute "is not whether a 'majority' of the events occurred in this district" but whether a substantial portion of the events giving rise to Plaintiffs' claim occurred in the Northern District of Illinois. Mercantile Capital Partners v. Agenzia Sports, Inc., No. 04 C 5571, 2005 WL 351926, at *4 (N.D. Ill. Feb. 10, 2005) (Manning, J.) (citation omitted).  As this Court explained in Mercantile Capital:

> To meet the substantial portion test, the events or omissions must have more than "some tangential connection" to the chosen venue.  Congress included the "substantial" language in section 1391(a)(2) "to preserve the element of fairness so that a defendant is not haled into some remote district having no real relationship to the dispute."  When determining whether the substantial portion requirement is met, courts examine the location of the events giving rise to the claims alleged by the plaintiff and "the nature of the dispute."

Id. (citations omitted).

    B.    The ESA's Venue Provision

In addition to the general federal venue statute, venue in this case may also be properly based on the ESA's venue provision, which provides:  "Any suit under this subsection may be brought in the judicial district in which the violation occurs."  16

7

U.S.C. § 1540(g)(3)(A).  This venue provision is permissive and "supplements the general venue statute."  McCrary v. Gutierrez, No. 2:06-cv-0086, 2006 WL 1748410, at *2 (E.D. Cal. June 23, 2006).  Therefore, "the statute permits—but does not require—a lawsuit to 'be brought in the judicial district in which the violation occurs.'"  Northwest Forest Res. Council v. Babbitt, No. 93-1579, 1994 WL 908586, at *2 (D.D.C. Apr. 13, 1994).

**II.     Venue is Proper in the Northern District of Illinois Because the Decision Giving Rise to Plaintiffs' Claims Was Made in This District.**

As discussed above, Plaintiffs' claims arise out of the critical habitat designation for the Hine's emerald dragonfly principally authored by the Chicago Field Office of the U.S. Fish and Wildlife Service.  While it is true that Plaintiffs' claims specifically challenge the Final Rule's exclusion of the National Forest land in Michigan and Missouri, and a substantial portion of the effects of Defendants' legal violations may be felt in those states, the central events giving rise to the claims – namely the Final Rule's determination that those areas were to be excluded – took place in this district.

Even before the 1990 amendments to the general venue statute, the Supreme Court recognized that venue is proper in a district in which government officials make or are involved in a challenged decision, even if its primary effects are in another district. See, e.g., Leroy, 443 U.S. at 185-86 (applying the stricter pre-1990 venue provision, Court found venue not proper in Texas, where statute had its allegedly improper impact of blocking plaintiff's transaction, but would have been proper in Idaho, where statute was passed and where government decision to block the transaction was made).  After the 1990 amendments, of course, the propriety of venue in such circumstances is even stronger.  See Greater Yellowstone Coalition v. Bosworth, 180 F. Supp.2d 124, 128-29

8

(D.D.C. 2001) (in challenge to Forest Service's issuance of grazing permits for national forest land in Montana, court refuses transfer to Montana and retains case in District of Columbia, noting that D.C. officials were involved in decision to issue permits); Sierra Club v. Flowers, 276 F. Supp. 2d 62, 66 (D.D.C. 2003) (finding, on a motion to transfer, that Plaintiff could have brought its action in the Southern District of Florida after Defendants asserted, in part, that "much of the decision-making process occurred in federal agency offices in Florida").

Here, not only was the challenged decision made in this district, but all comments on the Proposed Rule were sent to the Chicago Field Office, including Plaintiffs' comments, which were also sent *from* Chicago. The sole public hearing on the Proposed Rule took place in this district, in Romeoville, Illinois. All of these events have "more than a tangential connection" and bear a "real relationship" to the claims in this case. Mercantile Capital, 2005 WL 351926, at *4; see Wilderness Soc'y v. Babbitt, 104 F. Supp.2d 10, 14 (D.D.C. 2000) (acknowledging substantial connection between District of Columbia and case challenging agency decision to approve oil and gas leasing in Alaska, based on involvement of D.C. official in the challenged decision and holding of public hearing in D.C.). Indeed, these events suggest that the administrative record, based on which this case will be resolved, is also located largely, if not entirely, in the Northern District of Illinois.

Furthermore, even if it is relevant to consider where the effects of the agency action will be felt, this is not a case where none of the effects of the challenged decision will be felt within the district. To the contrary, Hine's emerald dragonfly populations exist in this district and the Service estimates that the cost of protections required by the

9

species' endangered status will be far higher in the Northern District of Illinois than in all other districts combined. Final Rule, 72 Fed. Reg. at 51118-19, 51138-40; Bloom Decl., Exhibit C. The Service's improper exclusions of the National Forest land from the critical habitat designation may extend the time before the species can be removed from the endangered species list.[2] The sooner the Hine's emerald dragonfly is allowed to recover, the sooner residents of the Northern District of Illinois can be relieved of some of the costs associated with the species' conservation.

Accordingly, given the substantial connection between the events giving rise to Plaintiffs' complaint and the Northern District of Illinois, the general federal venue statute supports the propriety of venue in this district.

## II. Venue is Also Proper in the Northern District of Illinois Because the ESA Violation Occurred in This District.

Venue is also proper under the ESA's specific venue provision, under which "[a]ny suit under this subsection may be brought in the judicial district in which the violation occurs." 16 U.S.C. § 1540(g)(3)(A). As alleged in the Complaint, Defendants' Final Rule violates § 4(b)(2) of the ESA because it does not provide a legally sufficient and cognizable basis for the decision to exclude the National Forest land in Michigan and Missouri from Hine's emerald dragonfly critical habitat. Thus, it is the determination to exclude this land, made in the Final Rule authored by the Service's Chicago Field Office,

---

[2] The Recovery Plan for the Hine's emerald dragonfly states that the species will be considered for de-listing when both the Northern and Southern "Recovery Units" contain "a minimum of three populations composed of at least three subpopulations." The Northern Recovery Unit includes populations in Wisconsin and Michigan, while the Southern Recovery Unit includes populations in Illinois and Missouri. "Hine's Emerald Dragonfly (*Somatochlora hineana* Williamson) Recovery Plan," at 30-32 (Dec. 27, 2001) (available at http://www.fws.gov/midwest/Endangered/insects/hed/hed-recplan.html).

10

that violates the ESA. The ESA's venue provision, therefore, also supports venue in this district.

### III. The Aland v. Kempthorne Decision Does Not Change this Analysis and, Indeed, Supports It.

Of course, venue may be proper in other districts as well as this one. The Court, in asking for briefing on venue in this case, referred to Aland v. Kempthorne, No. 07 C 4358, 2007 WL 4365340 (N.D. Ill. Dec. 11, 2007). In that case, the plaintiffs challenged the Service's decision to remove a population of grizzly bears from the list of endangered and threatened species under the ESA. While the defendants agreed that venue was proper in the Northern District of Illinois, because at least one of the plaintiffs resided in the district, the defendants nonetheless moved to *transfer* the case to the federal district court in Idaho, where a related case was already pending. Id. at *3. Furthermore, while none of the de-listed grizzly bears existed in or even near the Northern District of Illinois, some of the grizzly bears at issue existed in Idaho and one "open house" for public comments on the de-listing took place in Idaho. Id. at *3, 5. All of these factors, and others (including conservation of judicial resources), led the court to transfer the case to Idaho. Id. at *5. Aland thus does not suggest that venue in this case is improper but rather that, while venue is proper in the Northern District of Illinois, it may also be proper in some other districts as well.

Further, in finding venue proper in the District of Idaho, the court in Aland noted that a substantial portion of the species at issue in the case existed in Idaho and that, in publishing the Final Rule, the Service considered comments by those in and around Idaho. Id. at 3. These factors would further support venue in the present case in the Northern District of Illinois. The Hine's emerald dragonfly exists in the Northern District

11

of Illinois, as well as in Wisconsin, Michigan and Missouri, and public comments were received from the Northern District of Illinois, including Plaintiffs' written comments and comments received at the sole public hearing regarding the critical habitat decision, which took place in this district.

      Finally, it is worth noting that, in support of finding venue proper in Idaho, Aland cites Northwest Forest Resource Council v. Babbitt, No. 93-1579, 1994 WL 908586 (D.D.C. Apr. 13, 1994). That case "involve[d] the population of murrulets in Washington, Oregon and California, and the challenged rule was promulgated with the assistance of the FWS [Fish and Wildlife Service] Field Offices in all three states." Id., at *2. "Accordingly," the Court held, "any of these three states, in addition to the District of Columbia, would provide a proper venue for this action." Id. Similarly, in the present case, that the species at issue exists in this district and that the challenged rule was authored by the Service's Chicago Field Office indicate that venue is proper in this district.

## Conclusion

      For the foregoing reasons, venue in this case is proper in the Northern District of Illinois.

Dated:       June 5, 2008

                                Respectfully submitted,


              By:     __/s/_____
                              Aaron M. Bloom  (Admitted *pro hac vice*)
                              NATURAL RESOURCES DEFENSE COUNCIL
                              40 West 20th Street
                              New York, NY 10011
                              Telephone: (212) 727-4417
                              Fax: (212) 727-1773
                              Email: abloom@nrdc.org

                              Attorney for Plaintiffs

<u>CERTIFICATE OF SERVICE</u>

      I, Aaron M. Bloom, hereby certify that I caused a true and correct copy of Plaintiffs' "Memorandum of Law in Support of Venue in the Northern District of Illinois" to be filed by ECF. All parties are represented by an ECF user.


Dated:   June 5, 2008                                          _____/s/_____
                                                               Aaron M. Bloom