**IN THE UNITED STATES DISTRICT COURT FOR THE**

**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| NORTHWOODS WILDERNESS RECOVERY, *et al*., | ) ) ) ) |
| Plaintiffs, | ) Case No.:  08-cv-1407 (BMM) (SEC) ) |
| v. | ) **DECLARATION OF AARON M. BLOOM** ) **IN SUPPORT OF VENUE IN THE** ) **NORTHERN DISTRICT OF ILLINOIS** |
| DIRK KEMPTHORNE, *et al*., | ) ) |
| Defendants. | ) ) |

I, Aaron M. Bloom, declare as follows:

      1.      Attached as Exhibit 1 is a true and correct copy of a September 25, 2006 Letter from John Buse, Center for Biological Diversity, to John Rogner, Field Supervisor, Chicago Ecological Services Field Office of the U.S. Fish and Wildlife Service.

      2.      Attached as Exhibit 2 is a true and correct copy of a July 2, 2007 Letter from John Buse, Center for Biological Diversity, to John Rogner, Field Supervisor, Chicago Ecological Services Field Office of the U.S. Fish and Wildlife Service (excluding the attachment to that letter).

      3.      Attached as Exhibit 3 is a true and correct copy of excerpts of the January 25, 2007 "Draft Economic Analysis of Critical Habitat Designation for the Hine's Emerald Dragonfly," prepared for the U.S. Fish and Wildlife Service by Industrial Economics, Incorporated.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 5, 2008             _____/s/_____

New York, NY                   Aaron M. Bloom

<u>CERTIFICATE OF SERVICE</u>

I, Aaron M. Bloom, hereby certify that I caused a true and correct copy of this "Declaration of Aaron Bloom in Support of Venue in the Northern District of Illinois," along with all referenced Exhibits, to be filed by ECF.  All parties are represented by an ECF user.


Dated:   June 5, 2008                      _____/s/_____

                                                                Aaron M. Bloom

# Exhibit A

to June 5, 2008 Declaration of Aaron M. Bloom in Support
of Venue in the Northern District of Illinois

 # CENTER FOR BIOLOGICAL DIVERSITY

September 25, 2006

John Rogner, Field Supervisor
U.S. Fish and Wildlife Service
1250 S. Grove, Suite 103
Barrington, IL  60010

Re:     Comments on Hine's Emerald Dragonfly Proposed Critical Habitat

Dear Supervisor Rogner:

Please accept the following comments on the proposed critical habitat designation for the Hine's Emerald Dragonfly (71 Fed. Reg. 42442, July 26, 2006).  These comments are submitted on behalf of the Center for Biological Diversity, Northwoods Wilderness Recovery, Habitat Education Center, Door County Environmental Council, and Michigan Nature Association. Together, these five groups were plaintiffs in a lawsuit filed in 2004 challenging the Secretary of the Interior's failure to designate critical habitat for the Hine's Emerald Dragonfly pursuant to the Endangered Species Act.  Some of these groups will be submitting their own comments under separate cover.

Role of Critical Habitat Designation

The proposed rule states that critical habitat designations are "driven by litigation and courts rather than biology."  71 Fed. Reg. at 42443.  It is true that most critical habitat designations, including this one, are compelled by litigation and court orders.  However, notwithstanding the self-serving disclaimer in the proposed rule, critical habitat designations are driven by litigation only to the extent that the Fish and Wildlife Service ("Service") fails to meet its statutory obligation to designate critical habitat concurrently with listing.  Thus, while the proposed rule may complain about the burden of designating critical habitat, it is a burden imposed by unambiguous statutory mandate, not by litigation.  The Service's failure to meet its statutory critical habitat designation obligations has been particularly egregious in the Service's Great Lakes-Big Rivers Region (Region 3).  By our count, critical habitat has been designated for only 5 of the approximately 69 listed species in the region (Gray Wolf, Indiana Bat, Piping Plover, Niangua Darter, and Topeka Shiner).  The Service has initiated only two of these critical habitat designations (Gray Wolf and Indiana Bat), and the last of these (Indiana Bat) was issued in 1978. The other designations all resulted from citizen petitions or lawsuits.  It is striking that since 1978, when Congress amended the Endangered Species Act to require critical habitat designation concurrent with listing, Region 3 has failed to issue a single critical habitat designation on its

Comments on Hine's Emerald Dragonfly Proposed Critical Habitat
September 25, 2006
Page 2

own initiative.  The result that critical habitat designations are "driven by litigation" after decades of agency inaction is hardly surprising.

Critical habitat designation is strongly associated with species recovery, as Congress intended. One recent study, submitted as Attachment A, indicates that species that have had critical habitat designated for two or more years were more than twice as likely to have an improving population trend in the late 1990s, and less than half as likely to be declining in the early 1990s, as species without designated critical habitat.[1]  Critical habitat designation for the Hine's Emerald Dragonfly will require that, in any Section 7 consultation with the Service, the federal action agency and the Service must consider habitat destruction.  Documents that we have obtained through Freedom of Information Act requests indicate that the Service has not assessed the threat to the species due to habitat destruction in its previous consultations regarding the Hine's Emerald Dragonfly.  In addition, there are no extant Habitat Conservation Plans for the Hine's Emerald Dragonfly.  Nonetheless, the Hine's Emerald Dragonfly final listing rule and Recovery Plan expressly identify habitat destruction or alteration as one of the primary threats to the species.  Recovery Plan at 19.  Critical habitat designation will ensure that habitat destruction is assessed in future consultations, at least where a federal action may result in the destruction or adverse modification of designated critical habitat.  The final critical habitat designation should more accurately acknowledge the additional protection afforded the Dragonfly by the designation.

The proposed critical habitat designation states that "[t]o the extent that designation of critical habitat provides protection, that protection can come at significant social and economic cost."  71 Fed. Reg. at 42443.  This statement is not supported by any evidence indicating that it applies to the Hine's Emerald Dragonfly critical habitat designation.  There is little evidence of a social cost associated with Hine's Emerald Dragonfly critical habitat designation.  On the contrary, many private landowners have recognized that critical habitat designation and conservation of the Hine's Emerald Dragonfly poses no social or economic threat.  See, e.g., statements of landowners, Attachment B.  In addition, the proposed rule is already designed to minimize economic impacts by, for example, excluding "human-made structures … not containing one or more of the constituent elements …"  71 Fed. Reg. at 42448.

The generic observation in the proposed rule that critical habitat designation has significant costs also ignores the economic and social <u>benefits</u> of critical habitat designation.  These benefits include promoting of tourism through the protection of natural ecosystems and landforms, affording additional recreational opportunities through the protection of shorelines and open space, maintaining valuable ecological services through the protection of wetlands and other habitats, providing flood control benefits associated with wetland protection, protecting other species dependent on the same habitat, protecting migratory waterfowl, and providing the Service expertise and assistance to non-federal landowners.  These benefits must be considered in any economic analysis of the critical habitat designation, and should be weighed in any determination to exclude specific areas from the critical habitat designation.  The proposed rule

---

[1] Taylor, M., Suckling K., Rachlinski J.  2005.  The Effectiveness of the Endangered Species Act:  A Quantitative Analysis. *BioScience* 55(4):360-367.

Comments on Hine's Emerald Dragonfly Proposed Critical Habitat
September 25, 2006
Page 3

fails to consider any of these potential benefits in the proposed exclusions, contrary to the requirements of Section 4(b)(2) of the Endangered Species Act.

The proposed rule states that "designation of critical habitat may not include all of the habitat areas that may eventually be determined to be necessary for the recovery of the species … critical habitat designations do not signal that habitat outside the designation is unimportant or may not be required for recovery."  71 Fed. Reg. 42445.  While we agree that areas not designated may be important or even essential for the conservation or recovery of the species, the focus of the proposed rule must be placed on identifying and designating those areas, including both occupied and unoccupied habitat, that are essential for the conservation and recovery of the Hine's Emerald Dragonfly.  Thus, if the best available scientific evidence indicates that an area should be included in the designation, the evidentiary burden is on the Service to justify the area's exclusion.

<u>Lack of Detailed Maps and Descriptions</u>

The maps and descriptions included with the proposed rule lack sufficient detail to determine whether specific features that are essential for the conservation of the Hine's Emerald Dragonfly are included in the proposal, how proposed critical habitat relates to surrounding land uses, and whether specific properties are included.  The proposed rule should be reissued with more detailed maps that allow the public to discern and comment on these features.  In particular, the detailed maps should identify street, road and county border references to allow for easier pinpointing of the locations; ownership lines or borders; primary constituent element features, including recharge, foraging, and potential foraging areas; suitable areas for dispersal, reintroduction and recovery near the proposed sites; and areas where identified threats to primary constituent elements, such as contaminant reduction plans would be implemented.

<u>Primary Constituent Elements</u>

The proposed rule identifies the primary constituent elements essential to the conservation of both the larval and adult forms of the Hine's Emerald Dragonfly.  Two important physical features essential for the conservation and recovery of the species, however, are not specifically identified.  First, while the proposed rule does identify calcareous water from intermittent seeps and springs as an essential feature for egg deposition, larval growth, and development (71 Fed. Reg. at 42448) and acknowledges that "[c]hanges in surface and sub-surface hydrology could be detrimental to the Hine's emerald dragonfly" (71 Fed. Reg. at 42449), it does not address the groundwater recharge areas responsible for these seeps and springs.  Disturbance or destruction of these recharge areas will result in take of Hine's Emerald Dragonfly as surely as if the seeps and springs were directly filled.  The identification of primary constituent elements for the species must therefore recognize the interdependence of surface water features on groundwater recharge areas and swales, and include the latter in the designation where this interdependence is established.

Second, the proposed rule fails to recognize the importance of foraging areas beyond the immediate vicinity of the "marsh, sedge meadow, dolomite prairie, and the fringe (up to 328 ft

Comments on Hine's Emerald Dragonfly Proposed Critical Habitat
September 25, 2006
Page 4

[100m]) of bordering shrubby and forested areas with open corridors for movement and dispersal" identified as a primary constituent element for adults. In fact, "old fields and pastures" are expressly excluded in the proposed rule, despite the acknowledgment that "[d]irect loss of breeding or foraging habitat could potentially reduce both adult and larval population sizes." 71 Fed. Reg. at 42448, 42449. Elsewhere, however, the proposed rule recognizes that open areas and pasture land provide important foraging habitat. See, e.g., 71 Fed. Reg. at 42455 ("The fen and an adjacent open pasture provide foraging habitat and are surrounded by contiguous, closed canopy forest."). The description of primary constituent elements should be expanded to include areas used for foraging. Where upland areas, pastures, and other suitable foraging habitat are essential for the conservation of the Hine's Emerald Dragonfly, such habitat should be designated as critical habitat.

The importance of protecting groundwater recharge areas and upland foraging locations was emphasized by Dr. Dan Soluk, a leading scientist studying the Hine's Emerald Dragonfly and a member of the Hine's Emerald Dragonfly Recovery Team:

> I think there needs to be a much wider approach than has been taken traditionally to preserve the habitats for this species. It's going to require preservation of not only the immediate habitat, but also the area around the habitat. I've been working with the Nature Conservancy in Door County (Wisconsin) and the Will County Forest Preserve District in Illinois to attempt to do some of these things. Basically, you need to acquire even if it's only corn fields that are adjacent to the habitat, you need to have some kind of control in those environments. If you don't, then development in those areas will threaten the habitat where the species occurs.
>
> As I said it makes the Hines Emerald almost a flagship for the sort of concerns that I think are really important about wetlands preservation. That we need to understand all the sources of water for those wetlands. We need to consider ground water as well as surface water. If we don't then were are going to progressively lose wetlands even when those wetlands are protected.[2]

As Dr. Soluk indicates, habitat protection requires not only acquisition, but measures to control and protect habitat that is set aside. Critical habitat designation provides the best available mechanism for protecting Hine's Emerald Dragonfly habitat through the consultation requirements of Section 7 of the Endangered Species Act.

Groundwater recharge areas, other hydrologically-connected areas, and potential foraging habitat surrounding all of the areas proposed for Hine's Emerald Dragonfly critical habitat should be evaluated for inclusion in the critical habitat designation.

---

[2] Transcribed from a November 2003 interview by Ricardo Jomarron, available as a Real Audio file on the Habitat Education Center's website,
http://www.hecenter.org/Hines%20emerald%20campaign.html (last accessed September 25, 2006)

Comments on Hine's Emerald Dragonfly Proposed Critical Habitat
September 25, 2006
Page 5

Relation to Recovery Plan

The proposed rule should better integrate and implement the recommendations of the Final Recovery Plan for the Hine's Emerald Dragonfly.  In particular, it should consider designating areas that assist in implementing the recommended action of reintroduction, introduction, and augmentation of Hine's Emerald Dragonfly populations.  Site assessment is required for this recovery action, and the critical habitat designation process should include an evaluation of potential reintroduction/introduction/augmentation sites.

Unoccupied Habitat

The proposed rule states that the Service is not proposing to designate as critical habitat any areas outside the geographical area presently considered occupied by the species.  71 Fed. Reg. at 42448-42449.  The failure to designate any area not currently occupied by the Hine's Emerald Dragonfly is inconsistent with the requirement that critical habitat include those unoccupied areas essential for the conservation, and thus the recovery, of the species. 16 U.S.C. § 1532(5)(A)(ii).  In particular, the proposed rule arbitrarily fails to consider designating unoccupied but suitable habitat that may promote dispersal of Dragonflies or establish connectivity between isolated habitats.  As a result, the long-term viability of each isolated population is threatened, despite the proposed rule's acknowledgment that habitat fragmentation and destruction are the primary threats to recovery.  71 Fed. Reg. 42449.  The Hine's Emerald Dragonfly critical habitat designation should specifically address the need to promote recovery through the protection of additional unoccupied areas for the dispersal or expansion of existing populations.

Areas of potential Hine's Emerald Dragonfly habitat that should be considered as habitat essential for the recovery of the species include:

- The Stonington Peninsula just south of Rapid River, Michigan.  This area includes thousands of acres of suitable habitat within Hiawatha National Forest, particularly the area along the Lake Michigan shoreline that probably contains many or all of the identified primary constituent elements.  This ownership continues east to Nahma, and includes wetlands associated with the Ogontz and Sturgeon Rivers, and ridge and swale habitat along the Lake Michigan shoreline, again with many or all of the primary constituent elements.

- The Garden Peninsula, located southwest of Manistique, Michigan.  The eastern shore of this peninsula has several miles of frontage in Superior State Forest that contains habitat very similar to the habitat found in Door County, Wisconsin, and is actually an extension of the same landform, dominated by shallow-lying and surface limestone.  Private lands here also have many of the same habitat qualities.  Off the tip of Garden Peninsula, are several islands that most likely contain suitable habitat.  Little Summer Island, Summer Island and Poverty Island have Superior State Forest habitat.  Ridge and swale habitat

and extensive wetlands also exists around Fishdam and Little Fishdam Rivers, as well as land between Indian Lake State Park and Lake Michigan.

- Just a few miles east of Manistique, Michigan is a large, contiguous block of Lake Superior State Forest that contains the Milokokia and Crow Rivers, again with many or all of the identified primary constituent elements. The east unit of the Hiawatha National Forest begins just east of the town of Naubinway. This block of public land contains interesting habitat around Hog Island Creek and Davenport Creek. Especially of interest is the Pte. Aux Chenes River and Natural Area, which is in Hiawatha National Forest ownership, and containing many or all primary constituent elements. The Natural Area contains many other endangered and rare species, and is only a few miles west of Hine's Emerald Dragonfly Michigan Unit 1 habitat in the Hiawatha National Forest.

- Northeast of St. Ignace and east of Michigan Unit 2, wetlands and ridge and swale habitat is located around St. Martin's Bay and St. Martin's Point, on the north shore of Lake Huron. Suitable habitat and many or all of the primary constituent elements appear to occur in the Lake Superior State Forest and Detour State Park at very tip of the eastern part of the peninsula and just east of Detour, Michigan. The occurrence of limestone pavement, known for harboring many rare species, and its proximity to wetland systems found on Drummond Island, should provide many or all of the primary constituent elements for Hine's Emerald Dragonfly. Likewise, habitat is located on the Saint Mary's River and around the Munuscong River and Munuscong Bay in the Lake Superior State Forest.

- Several small areas of the Mackinaw State Forest are located between Michigan Units 4, 5, and 6, that may contain many or all primary constituent elements. We believe these areas could enhance the recovery of the species and should be included as critical habitat.

- Potential habitat that contains many or all primary constituent elements also occur within Wilderness State Park and between the Park and Mackinac City, Michigan, on the south shore of Lake Michigan at the Mackinac Straits.

These areas should be considered for inclusion in the Hine's Emerald Dragonfly critical habitat designation based on the potential occurrence of the species, presence of primary constituent elements, and the potential enhancement of recovery through increased habitat connectivity and dispersal opportunities.

Conservation Partnerships on Non-Federal Lands

The proposed rule states that many non-federal landowners derive satisfaction from contributing to endangered species recovery. 71 Fed. Reg. at 42460. In our experience, this satisfaction is not mutually exclusive of these landowners' support for designation of their own land as critical

Comments on Hine's Emerald Dragonfly Proposed Critical Habitat
September 25, 2006
Page 7

habitat for the Hine's Emerald Dragonfly.  The proposed rule goes on to say, however, that "judicious use of excluding specific areas from critical habitat designations can contribute to species recovery and provide a superior level of conservation than critical habitat alone," and provides an example based on voluntary conservation agreements in Hawaii.  Id.  As an initial matter, the success of the voluntary conservation agreements in Hawaii does not prove, or even support the proposition, that exclusion of specific areas provides superior conservation benefits to designating these areas as critical habitat.  Since the specific areas were not designated as critical habitat in the Hawaii example, it is entirely speculative to conclude that conservation efforts would have been impaired if they were so designated.  Critical habitat designation does not preclude voluntary conservation efforts. Moreover, the Hawaii example is wholly inapposite to the Hine's Emerald Dragonfly situation.  Landowners have indicated their support for the critical habitat designation, including designation of their property.  They see no inconsistency between critical habitat designation and their performance of voluntary conservation measures, and recognize that critical habitat designation will impose little or no economic or social burden.  The Michigan Nature Association, for example, owns and manages conservation lands in Michigan that are proposed for designation as critical habitat and supports the designation.  See, e.g., Attachment B.

Illinois Populations

While recognizing the threat to the Hine's Emerald Dragonfly due to groundwater depletion, alteration, and contamination (see, e.g. 71 Fed. Reg. at 42451), the proposed rule does not specifically address this threat by designating areas that would protect groundwater.  According to the Illinois State Museum's website:

> In Illinois, populations of Hine's emerald dragonfly seem to be rare and localized.  Much of the known remaining habitat has been reduced due to industrialization and urbanization. Pressures of urbanization also have contributed to development of additional roads, bridges, and golf courses. Contamination of surface and ground water from industrial sites, as well as petroleum products and road salt could be a major threat to the larval habitat.[3]

The description of the primary constituent elements for Hine's Emerald Dragonfly critical habitat should be revised to recognize the importance of addressing groundwater depletion and water quality degradation.  The Illinois units should be reviewed to ensure that the necessary features and areas required to protect groundwater quality and quantity are incorporated in the critical habitat designation.

According to another Hine's expert, Everett "Tim" Cassett, genetic analysis indicates that the Illinois population has a far greater haploid/genetic diversity than other populations.[4]  Thus, the importance of protecting Hine's Emerald Butterfly habitats in Illinois is heightened, as these

---

[3] http://www.museum.state.il.us/research/entomology/hines/mainpage.html (emphasis added, last accessed September 25, 2006)
[4] Personal communication to Ricardo Jomarron, November 2003.

Comments on Hine's Emerald Dragonfly Proposed Critical Habitat
September 25, 2006
Page 8

populations may contain the genetic diversity required for recovery. The critical habitat designation should recognize the importance of protecting genetic diversity through habitat conservation.

Illinois Unit 1: We support the inclusion of Illinois Unit 1 in the critical habitat designation. This unit contains high-quality occupied habitat with all primary constituent elements. As the proposed rule indicates, the majority of this unit is a dedicated Illinois Nature Preserve managed and leased by the Will County Forest Preserve District. The District's current management plan does not specifically address the Hine's Emerald Dragonfly. Even if the Service determines that the plan does provide some conservation benefit for the Dragonfly, it does not follow that this unit should not be included in the critical habitat designation, since designation will trigger Section 7 consultation for any federal actions and could benefit the District in its management and education activities. These and other benefits of critical habitat designation, including enhanced recreational, aesthetic, and natural experiences, supporting valuable ecological services, protection of other species associated with the protected ecosystems, and flood control benefits associated with wetland conservation, must be considered with respect to any proposal to exclude this unit. In addition, the anticipated incorporation of this unit in a pending Habitat Conservation Plan ("HCP") should not preclude designation, since the benefits and completion of the HCP are speculative at this point.

Illinois Unit 2: We support the inclusion of Illinois Unit 2 in the critical habitat designation. This unit contains high-quality occupied habitat with all primary constituent elements. The anticipated incorporation of this unit in a pending HCP should not preclude designation, since the benefits and completion of the HCP are speculative at this point.

Illinois Unit 3: We support the inclusion of Illinois Unit 3 in the critical habitat designation. This unit contains high-quality occupied habitat with all primary constituent elements. As the proposed rule indicates, the majority of the unit is a dedicated Illinois Nature Preserve owned and managed by the Will County Forest Preserve District. The District's current management plan does not specifically address the Hine's Emerald Dragonfly. Even if the FWS determines that the plan does provide some conservation benefit for the Dragonfly, it does not follow that this unit should not be included in the critical habitat designation, since designation will trigger Section 7 consultation for any federal actions and could benefit the District in its management and education activities. These and other benefits of critical habitat designation, including enhanced recreational, aesthetic, and natural experiences, supporting valuable ecological services, protection of other species associated with the protected ecosystems, and flood control benefits associated with wetland conservation, must be considered with respect to any proposal to exclude this unit. In addition, the anticipated incorporation of this unit in a pending HCP should not preclude designation, since the benefits and completion of the HCP are speculative at this point. In addition, Illinois Unit 3 should be expanded to include suitable areas that are hydrologically linked to the designated area and/or that provide foraging habitat. Areas to the north of Unit 3 should also be considered for inclusion as potential dispersal or reintroduction habitat.

Comments on Hine's Emerald Dragonfly Proposed Critical Habitat
September 25, 2006
Page 9

Illinois Unit 4:  We support the inclusion of Illinois Unit 4 in the critical habitat designation. This unit contains high-quality occupied habitat with all primary constituent elements and repeated observations of adult and larval Hine's Emerald Dragonflies.  As the proposed rule indicates, this unit is owned and managed by the Forest Preserve Districts of Will and Cook Counties.  The construction of Interstate 355 through this Forest Preserve District is precisely the type of project that justifies designation of critical habitat for the species – future Section 7 consultations will proceed on the basis of the "no adverse modification or destruction of critical habitat" standard, not merely the "no jeopardy" standard.  Thus, critical habitat designation will provide an additional conservation and recovery benefit to the Hine's Emerald Dragonfly beyond that afforded by listing.

Illinois Unit 5:  We support the inclusion of Illinois Unit 5 in the critical habitat designation.  As the proposed rule indicates, this unit contains occupied habitat with repeated observations of adult and larval Hines Emerald Dragonflies.  The majority of the land within this unit is owned and managed by the DuPage County Forest Preserve District.  The District recently stated its support for designation of 280 acres of the Waterfall Glen Forest Preserve.  According to the *Chicago Tribune*, "Tom Velat, the district's director of invertebrate ecology, said designation of the 280 acres as critical habitat means the district can obtain assistance from the U.S. Fish and Wildlife Service in preserving the integrity of the area."[5] The FWS should acknowledge the support of the Forest Preserve District and other landowners for designating critical habitat.

Illinois Unit 6:  We support the inclusion of Illinois Unit 6 in the critical habitat designation. This unit contains high-quality occupied habitat with all primary constituent elements and repeated observations of adult Hine's Emerald Dragonflies as well breeding behavior.  As the proposed rule indicates, this unit is owned and managed by the Cook County Forest Preserve District.

Illinois Unit 7:  We support the inclusion of Illinois Unit 7 in the critical habitat designation. This unit contains high-quality occupied habitat with all primary constituent elements and repeated observations of adult Hine's Emerald Dragonflies.  As the proposed rule indicates, a portion of this unit is a dedicated Illinois Nature Preserve owned and managed by the Illinois Department of Natural Resources.  The anticipated incorporation of this unit in a pending HCP should not preclude designation, since the benefits and completion of the HCP are speculative at this point.

Illinois Exclusions:  While no Illinois units are expressly proposed for exclusion, the proposed rule indicates in several instances that FWS is reviewing the effectiveness of various plans to determine their effectiveness in conserving Hine's Emerald Dragonfly habitat (see, e.g., the discussion of Illinois Unit 1, 71 Fed. Reg. at 42451).  It is impossible to determine what specific elements of such plans FWS may rely on in excluding additional areas or units in Illinois in the final critical habitat designation.  Because the proposed rule does not contain sufficient evidence or rationale for excluding additional areas, if the FWS does propose further exclusions in Illinois it must reopen public comment on the exclusions.

---

[5] "DuPage Forest District Receives $5 Million Grant" Chicago Tribune, September 20, 2006.

Comments on Hine's Emerald Dragonfly Proposed Critical Habitat
September 25, 2006
Page 10

<u>Michigan Populations</u>

Michigan Unit 1:  We support inclusion of Michigan Unit 1 in the critical habitat designation.
This unit contains exceptionally high-quality occupied foraging and breeding habitat, and all
primary constituent elements.  As the proposed rule indicates, the majority of this unit is part of
the Hiawatha National Forest.  The proposed rule further states that the Hiawatha National
Forest's Land Use and Management Plan "will protect all known Hine's breeding areas and
implement the Hine's Emerald Dragonfly recovery plan."  71 Fed. Reg. at 42452-42453.  The
Forest Plan, however, does not justify exclusion of this unit.  The unit includes lands outside of
the National Forest that are not covered by the Forest Plan.  In addition, while the Forest Plan
might address conservation of the Hine's Emerald Dragonfly, it would not in itself provide for
consultation with the FWS on future Forest Service actions that may destroy or adversely modify
Hine's Emerald Dragonfly habitat.  Finally, while the proposed rule acknowledges that logging
is a threat to Dragonfly habitat (71 Fed. Reg. at 42452), the Forest Service has recently proposed
timber cutting purportedly in order to protect the species.  Neither the Forest Service nor the
FWS has produced evidence that this logging proposed under the Forest Plan is actually likely to
benefit the Hine's Emerald Dragonfly.  Critical habitat designation and the additional
conservation benefit associated with the "no adverse modification or destruction of critical
habitat" standard would enhance the interagency review for proposed Forest Service actions that
affect Hine's Emerald Dragonfly habitat.

Michigan Unit 2:  We support inclusion of Michigan Unit 2 in the critical habitat designation.
This unit contains exceptionally high-quality occupied foraging and breeding habitat, and all
primary constituent elements.  As the proposed rule indicates, the majority of this unit is part of
the Hiawatha National Forest.  The proposed rule further states that the Hiawatha National
Forest's Land Use and Management Plan "will protect all known Hine's breeding areas and
implement the Hine's Emerald Dragonfly recovery plan."  71 Fed. Reg. at 42453.  The Forest
Plan, however, does not justify exclusion of this unit.  The unit includes lands outside of the
National Forest that are not covered by the Forest Plan.  In addition, while the Forest Plan might
address conservation of the Hine's Emerald Dragonfly, it would not in itself provide for
consultation with the FWS on future Forest Service actions that may destroy or adversely modify
Hine's Emerald Dragonfly habitat.  Finally, while the proposed rule acknowledges that logging
is a threat to Dragonfly habitat (71 Fed. Reg. at 42452), the Forest Service has recently proposed
timber cutting purportedly in order to protect the species.[6]  Neither the Forest Service nor the
FWS has produced any evidence that this logging proposed under the Forest Plan is actually
likely to benefit the Hine's Emerald Dragonfly.  While this project may be intended to benefit
the Hine's Emerald Dragonfly, the uncertainties surrounding this action indicate that it would
benefit from interagency consultation regarding its effects on critical habitat.  Critical habitat
designation and the additional conservation benefit associated with the "no adverse modification
or destruction of critical habitat" standard would enhance the interagency review for proposed
Forest Service actions that affect Hine's Emerald Dragonfly habitat.

---

[6] Environmental Assessment, Sprinkler Timber Sale, Hiawatha National Forest

Comments on Hine's Emerald Dragonfly Proposed Critical Habitat
September 25, 2006
Page 11

Michigan Unit 3:  We support inclusion of Michigan Unit 3 in the critical habitat designation.
This unit contains exceptionally high-quality occupied habitat, including all primary constituent
elements, breeding habitat, and Lake Huron shoreline.  As the proposed rule indicates,
approximately half of this unit is owned by the State of Michigan, with the balance owned by the
Nature Conservancy or private owners.  The proposed rule states that the FWS is reviewing
management plans from the Michigan Department of Natural Resources and the Nature
Conservancy to determine if adequate protection and management of the unit is provided.  Even
if these plans do provide a conservation benefit for Hine's Emerald Dragonfly habitat within this
unit, they do not justify exclusion of this unit from the final critical habitat designation.  The unit
includes lands in private ownership that would not be covered by such plans.  In addition, these
plans would not provide for consultation with the FWS on future federal actions that may destroy
or adversely modify Hine's Emerald Dragonfly habitat.  Finally, the FWS should determine
whether the State of Michigan, Nature Conservancy, and private property owners are amenable
to critical habitat designation.

Michigan Unit 4:  We support inclusion of Michigan Unit 4 in the critical habitat designation.
This unit contains high-quality occupied habitat, all primary constituent elements, and at least
one breeding area for Hine's Emerald Dragonflies.  The proposed rule states that the majority of
the unit is a State park owned by the Michigan Department of Natural Resources.  The proposed
rule states that the FWS is reviewing management plans from the Michigan Department of
Natural Resources to determine if adequate protection and management of the unit is provided.
Even if these plans do provide a conservation benefit for Hine's Emerald Dragonfly habitat
within this unit, they do not justify exclusion of this unit from the final critical habitat
designation.  The unit includes lands in private ownership that would not be covered by such
plans.  In addition, these plans would not provide for consultation with the FWS on future federal
actions that may destroy or adversely modify Hine's Emerald Dragonfly habitat.

Michigan Unit 5:  We support inclusion of Michigan Unit 5 in the critical habitat designation.
This unit contains high-quality occupied habitat, all primary constituent elements, and at least
one breeding area for Hine's Emerald Dragonflies.  The proposed rule states that the entire unit
is owned by the State of Michigan.  The proposed rule states that the FWS is reviewing
management plans from the Michigan Department of Natural Resources to determine if adequate
protection and management of the unit is provided.  Even if these plans do provide a
conservation benefit for Hine's Emerald Dragonfly habitat within this unit, they do not justify
exclusion of this unit from the final critical habitat designation.  In addition, these plans would
not provide for consultation with the FWS on future federal actions that may destroy or
adversely modify Hine's Emerald Dragonfly habitat.

Michigan Unit 6:  We support inclusion of Michigan Unit 6 in the critical habitat designation.
This unit contains high-quality occupied habitat, all primary constituent elements, and at least
one breeding area for Hine's Emerald Dragonflies.

Additional Michigan Designations:  It is in some cases difficult or impossible to determine if
suitable Hine's Emerald Dragonfly habitat has been included in the proposed designation.  We
therefore propose inclusion of the following specific areas if they are not already included or are

Comments on Hine's Emerald Dragonfly Proposed Critical Habitat
September 25, 2006
Page 12

proposed for exclusion.  Hine's Emerald Dragonflies have been observed in each of these areas,
and the inclusion of these areas is expressly supported by the Michigan Nature Association as a
local landowner (31 acres in Mackinac County and 95 acres in Alpena County).

- In Mackinac County, the area in the SW quarter of Section 31, T42N, R4W.  There is
  existing habitat for the Hines Emerald Dragonfly in the area and individuals have been
  confirmed within a 2-mile radius of this site.

- In Mackinac County, land in the Hiawatha National Forest and on private parcels in the
  sections surrounding Brevort Lake in T42N, R5W and T41N, R5W.

- In Mackinac County, land owned by the State of Michigan and in the Hiawatha National
  Forest in Section 6 and 7 of T41N, R4W.  This land may already be included in Michigan
  Unit 1, but we strongly urge the Service to maintain this area and the rest of Michigan
  Unit 1, which is contiguous with this area and the above-referenced land owned by the
  Michigan Nature Association and other private landowners, in the designated critical
  habitat for the Hine's Emerald Dragonfly.

- In Alpena County, land around the perimeter of Grass Lake, in Section 33 of T32N, R9E
  and Section 4 of T31N, R9E.

- In Presque Isle County, land in sections 27, 28 and 33 of T34N, R8E.

- In Presque Isle County, land in sections 29 and 30 of T35N, R6E.

Proposed Michigan Exclusions:  The proposed rule indicates in several instances that the Service
is reviewing the effectiveness of various plans to determine their effectiveness in conserving
Hine's Emerald Dragonfly habitat (see, e.g., the discussion of Michigan 3, 71 Fed. Reg. at
42453).  It is impossible to determine what specific elements of such plans the Service may rely
on in excluding additional areas or units in Michigan in the final critical habitat designation.  It is
therefore impossible to determine and comment on the basis, if any, for excluding Michigan
Units 3-6.  Because the proposed rule does not contain sufficient evidence or rationale for
excluding additional areas, if the Service does exclude these Michigan units, it must reopen
public comment on the exclusions.

Michigan Units 1 and 2 are proposed for exclusion based on the rationale that "[t]he requirement
to undertake additional consultations or revisit already completed consultations specifically to
address the effects of activities on designated critical habitat could delay or impair the U.S.
Forest Service's planned activities."  71 Fed. Reg. at 42462.  Avoiding the delay or impairment
of planned activities, however, is not necessarily a "benefit" of excluding areas in the Hiawatha
National Forest.  Delay of federal activities is a potential result of any Section 7 consultation, but
when weighed against the conservation benefits to the Hine's Emerald Dragonfly, this
consideration is entirely speculative and insubstantial.  Without evidence of a particular cost that

Comments on Hine's Emerald Dragonfly Proposed Critical Habitat
September 25, 2006
Page 13

outweighs the conservation benefits of critical habitat designation, this rationale does not justify exclusion of Michigan Units 1 and 2.

The proposed rule further states that if areas in the Hiawatha National Forest are not excluded from the Hine's Emerald Dragonfly critical habitat designation, "it might adversely impact the agency's willingness to devote limited resources to the voluntary conservation measures noted above, which exceed those that could be required from a critical habitat designation." 71 Fed. Reg. at 42462. This statement is pure speculation. Voluntary conservation measures can exist in perfect harmony with critical habitat designation, and are likely to help the Forest Service meet its Section 7 obligations. The asserted rationale does not justify exclusion of Michigan Units 1 and 2.

Missouri Populations

Missouri Units 1-26: We support inclusion of Missouri Units 1-26 in the critical habitat designation. These units appear substantially similar in that they are small, contain occupied habitat and all primary constituent elements, and include or are proximate to foraging areas for Hine's Emerald Dragonflies. It is not clear whether the open pasture and yards identified as foraging habitat are included in the proposed designation. Such foraging areas are essential habitat and should be included in the designation if they are not already. The proposed rule indicates that the Missouri units are under a mix of federal, state, and private ownership.

Proposed Missouri Exclusions: The proposed rule proposes to exclude all of the Hine's Emerald Dragonfly populations in Missouri from the protection afforded by the critical habitat designation. For federal lands within the Mark Twain National Forest, the stated rationale for the exclusion is that the 2005 Forest Plan "contains specific direction for management of fen habitat and for fens with known or suspected populations of Hine's emerald dragonflies." 71 Fed. Reg. 42462. For the reasons discussed above for the Hiawatha National Forest, the existence of a Forest Management Plan with policies regarding management of Hine's Emerald Dragonfly habitat does not justify the exclusion of these areas from designated critical habitat.

As with the proposed Michigan exclusions, the proposed rule suggests that there will be a benefit from the proposed exclusion because if these areas are not excluded, "[t]he requirement to undertake additional consultations or revisit already completed consultations specifically to address the effects of activities on designated critical habitat could delay or impair the U.S. Forest Service's planned activities." 71 Fed. Reg. at 42464. Avoiding the delay or impairment of planned activities, however, is not necessarily a "benefit" of excluding areas in the Mark Twain National Forest. Delay of federal activities is a potential result of any Section 7 consultation, but when weighed against the conservation benefits to the Hine's Emerald Dragonfly, this consideration is entirely speculative and insubstantial. Without evidence of a particular cost that outweighs the conservation benefits of critical habitat designation, this rationale does not justify exclusion of the portions of the Missouri units within the Mark Twain National Forest.

Comments on Hine's Emerald Dragonfly Proposed Critical Habitat
September 25, 2006
Page 14

The proposed rule further states that if the National Forest areas are not excluded, "it might adversely impact the agency's willingness to devote limited resources to the voluntary conservation measures noted above, which exceed those that could be required from a critical habitat designation." 71 Fed. Reg. at 42464. This statement is pure speculation. Voluntary conservation measures can exist in perfect harmony with critical habitat designation, and are likely to help the Forest Service meet its Section 7 obligations. The asserted rationale does not justify exclusion of the portions of the Missouri units within the Mark Twain National Forest.

For the Missouri state-owned lands proposed to be excluded, the purported benefit is that exclusion "will help strengthen the already robust working relationship between the Service and MDC." 71 Fed. Reg. at 42464. It may be that the current relationship between these agencies is not so robust if it would be threatened by the critical habitat designation. The proposed rule provides no explanation or evidence for its assertion that the exclusion of state-owned lands would provide a net conservation benefit. On the contrary, critical habitat is not mutually exclusive of the Service's good working relationship with the Missouri Department of Conservation. This rationale does not justify exclusion of state-owned lands in Missouri.

For privately-owned lands in Missouri, the purported benefit of exclusion is that exclusion would facilitate implementation of voluntary conservation agreements and avoid the negative perceptions associated with critical habitat designation. 71 Fed. Reg. at 42464-42465. If the proposed rule's account of hostility to the Hine's Emerald Dragonfly is correct, it represents a significant failure by the Service to educate the public about the species, particularly about the effects of critical habitat designation, which the Service elsewhere states will have little or no impact on private property owners. Moreover, the general perception of public hostility to the species does not justify exclusion of all privately-owned land in Missouri. It is our experience that many landowners are supportive of critical habitat designation after the purpose and effect of the designation is adequately explained. In addition, critical habitat designation and voluntary conservation agreements are not mutually exclusive. The proposed rule suggests, without any evidence, that all landowners in Missouri oppose the designation. This generic approach arbitrarily results in the exclusion of all Hine's Emerald Dragonfly habitat in Missouri, without any unit-by-unit consideration of conservation benefits or landowner amenability to critical habitat designation.

Wisconsin Populations

In Door County, the areas designated as critical habitat (Wisconsin Units 1-9) are somewhat unique in that the property in most instances is owned by private individuals who are entirely supportive of the designation. Other lands are predominantly public and privately-owned conservation lands, including the Ridges Sanctuary, which is a dedicated conservatory area, and the lands in southern Door County that are under Wisconsin Department of Natural Resources control. Several landowners that have critical habitat locations are individuals who submitted written testimony in support of the litigation that resulted in this proposed designation.

Wisconsin Units 1-9: We strongly support inclusion of Wisconsin Units 1-9 in the critical habitat designation. These Door County units contain high-quality occupied habitat, all primary

Comments on Hine's Emerald Dragonfly Proposed Critical Habitat
September 25, 2006
Page 15

constituent elements, and observed breeding habitat for Hine's Emerald Dragonflies.  Local landowners have stated their support for the Door County designations.  Designation will provide additional benefits by protecting springs/wetlands and wetland associated species, supporting the ecological services provided by wetlands, and protecting scenic and recreational areas, among other things.

Wisconsin Unit 10:  We support inclusion of Wisconsin Unit 10 in the critical habitat designation.  This unit consists primarily of state-owned land in the Cedarburg bog, and contains high-quality occupied habitat, all primary constituent elements, and observed breeding habitat for Hine's Emerald Dragonflies.  In addition, the critical habitat designation should evaluate areas surrounding the Cedarburg bog and designate those areas that are essential for protecting the quantity and quality of groundwater recharge that feeds the bog.

<u>Future Notices</u>

Thank you for your consideration of these comments.  Please provide us with subsequent notices regarding the Hine's Emerald Dragonfly critical habitat designation and economic analysis at the following addresses:

John Buse
Center for Biological Diversity
5656 S. Dorchester Avenue #3
Chicago, IL  60637

Douglas R. Cornett
Executive Director
Northwoods Wilderness Recovery
P.O. Box 122
Marquette, MI 49855

Ricardo Jomarron
President
Habitat Education Center
1345 Morrison St.
Madison, WI 53703

Jerry Viste
Executive Director
Door County Environmental Council,  Inc.
PO Box 114
Fish Creek, WI.  54212

Jeremy P. Emmi
Executive Director
Michigan Nature Association

Comments on Hine's Emerald Dragonfly Proposed Critical Habitat
September 25, 2006
Page 16

      326 E. Grand River Avenue
      Williamston MI 48895

Sincerely,

John Buse
Staff Attorney
Center for Biological Diversity

Douglas R. Cornett
Executive Director
Northwoods Wilderness Recovery

Ricardo Jomarron
President
Habitat Education Center

Jerry Viste
Executive Director
Door County Environmental Council

Jeremy P. Emmi
Executive Director
Michigan Nature Association

# Exhibit B

to June 5, 2008 Declaration of Aaron M. Bloom in Support
of Venue in the Northern District of Illinois

 CENTER *for* BIOLOGICAL DIVERSITY                    *Because life is good.*

July 2, 2007

John Rogner, Field Supervisor
Chicago Ecological Services Field Office
U.S. Fish and Wildlife Service
1250 S. Grove, Suite 103                              By Electronic Mail
Barrington, IL 60010                                 hedch@fws.gov

Re:    Hine's Emerald Dragonfly Draft Critical Habitat and Economic Analysis

Dear Mr. Rogner:

The following comments on the draft critical habitat designation and draft economic analysis for
the Hine's emerald dragonfly are submitted on behalf of the Center for Biological Diversity, the
Natural Resources Defense Council, Northwoods Wilderness Recovery, and Daniel R. Patterson.
Collectively, we represent approximately 700,000 members, including some 25,000 members
and activists in the upper Midwest.

The reopened public comment period on the draft critical habitat designation and the availability
of the draft economic analysis were noticed in the Federal Register on March 20, 2007. 72 Fed.
Reg. 13061. The comment period was again reopened (until July 2, 2007) as noticed in the
Federal Register on May 18, 2007. 72 Fed. Reg. 28016.

Some of us have previously commented on the proposed critical habitat designation for the
Hine's emerald dragonfly. The previous comments, dated September 25, 2006, dealt with many
of the issues raised in the Federal Register Notice. In particular, we (1) commented on the
reasons certain areas should be designated as critical habitat for the Hine's emerald dragonfly;
(2) questioned the methodology used to exclude primary constituent elements from the proposed
designation; (3) noted that there was no substantial evidence supporting the contention that the
exclusion of some areas from the designation outweighed the conservation benefit of including
these areas; and (4) objected to the exclusion of habitat within the Hiawatha and Mark Twain
National Forests because, among other reasons, there was no demonstration that the current
management plans for these lands adequately protect the Hine's emerald dragonfly.

We supplement the previous comments with the following additional comments on the proposed
critical habitat designation and the draft economic analysis. In addition, we attach comments on
the draft economic analysis prepared by GreenFire Consulting Group, LLC.

Hine's Emerald Dragonfly Draft Critical Habitat and Economic Analysis
June 5, 2008
Page 2


<u>Additional Support for Designation of Critical Habitat</u>

The March 20, 2007 Federal Register notice proposes an additional critical habitat unit in Wisconsin – Kellner's Fen in Door County.  We agree that this site contains all primary constituent elements and should be considered essential for the conservation of the species.  We therefore support inclusion of proposed Unit 11 in the Hine's emerald dragonfly critical habitat designation.  Based on the map provided in the Federal Register, however, it is not clear that the designation is sufficiently inclusive.  The final rule should also include the surrounding transitional habitat that may also contain primary constituent elements.

<u>The Current Status of the Species Must be Considered</u>

In our previous comments, we cited the Taylor *et al*. study (*BioScience* 55(4):360-367 [2005]), which shows a clear positive correlation between critical habitat designation and improving population trends for listed species.  It is our understanding that current population trends for the Hine's emerald dragonfly are declining.  Since critical habitat must include those areas that contain physical or biological features essential to the conservation of the species (16 U.S.C. § 1532(5)(A)(i)), the Fish and Wildlife Service ("Service") must assess the current status of the species in determining what areas to include in the final critical habitat designation.  The Service must specifically consider the role of critical habitat in recovery of the species.

<u>The Economic Analysis Inflates the Costs of Critical Habitat Designation Without Considering the Benefits</u>

For reasons discussed in greater detail in the attached comment prepared by GreenFire Consulting Group, LLC, we believe the draft economic analysis of the Hine's emerald dragonfly critical habitat designation is flawed.  In particular, the draft economic analysis:

*1.  The Draft Economic Analysis Fails to Define an Appropriate and Stable Baseline*

An accurate economic impact analysis requires the definition of the proper "baseline" against which costs and benefits of the proposed action are measured.  The baseline considers the state of things without the proposed action.[1]  Here, the draft economic analysis sets the baseline so low that virtually all conservation actions, including the effects of decisions that pre-date the critical habitat *proposal*, are considered consequences of the critical habitat designation.

---

[1] U.S. Office of Management and Budget, "Appendix 4: Guidelines to Standardize Measure of Costs and Benefits and the Format of Accounting Standards," in *Report to Congress on the Costs and Benefits of Federal Regulations,* March 22, 2000 ("OMB Guidelines 2000") at 64; OMB Guidelines 2003 at 5517.

Hine's Emerald Dragonfly Draft Critical Habitat and Economic Analysis
June 5, 2008
Page 3

Most of the baseline problems in the draft economic analysis appear to result from reliance on the Tenth Circuit Court of Appeals decision *New Mexico Cattle Growers Ass'n v. United States Fish and Wildlife Serv.*, 248 F.3d 1277 (2001). In that case, the court rejected the Service's baseline approach that equated the impacts of critical habitat designation with the impacts of listing, and held "we conclude Congress intended that the FWS conduct a full analysis of all of the economic impacts of a critical habitat designation, regardless of whether those impacts are attributable co-extensively to other causes." *Id*. at 1285.

While the *New Mexico Cattle Growers* decision is based on large part on the court's justifiable criticism of the Service's regulations that defined adverse modification of critical habitat to be identical to the ESA's jeopardy standard, we disagree with *New Mexico Cattle Growers* to the extent the court rejects the standard, economically-sound baseline approach that considers the world without the critical habitat designation in comparison to the world with the critical habitat designation. *See* GreenFire comments at p. 16. We believe that this approach is justified in this case. Indeed, nothing requires application of the Tenth Circuit decision here, and courts in other circuits have rejected or disagreed with the *New Mexico Cattle Growers* approach. *See Cape Hatteras Access Preservation Alliance v. U.S. Dep't of the Interior*, 344 F. Supp. 2d 108 (D.D.C. 2004); *Center for Biological Diversity v. BLM* (2006) 422 F. Supp. 2d 1115, 1152 (S.D. Cal. 2006); *see also Gifford Pinchot Task Force v. U.S. Fish and Wildlife Serv., 378 F.3d 1059, 1065* (9th Cir. 2004) (benefits attributable solely to critical habitat designation).

Even if *New Mexico Cattle Growers* provides valid guidance for determining the proper baseline, however, the draft economic analysis goes far beyond what is required by that decision. The draft economic analysis "considers *all future conservation-related impacts to be co-extensive with the designation*." Draft Economic Analysis at 15:19, emphasis added. This approach is not justified by *New Mexico Cattle Growers* or any other authority. The draft economic analysis thus makes no attempt to distinguish conservation costs that arise from the critical habitat designation and those that arise from other causes, such as listing. Accordingly, the analysis necessarily considers costs that arise *solely* from listing and application of the jeopardy standard. Even under the *New Mexico Cattle Growers* standard, costs evaluated in an economic analysis *must still be attributable somehow to the critical habitat designation* – even if they are "attributable co-extensively to other causes."

In addition, the draft economic analysis considers costs that arose, and were actually incurred, prior to the proposed critical habitat designation. Draft Economic Analysis at 18:32 (analysis "estimates economic impacts to activities from 1995 (year of the species' final listing).") These costs cannot be attributed to critical habitat designation, and the draft economic analysis provides no rationale for their inclusion.

The draft economic analysis further considers as co-extensive costs the conservation efforts of

Hine's Emerald Dragonfly Draft Critical Habitat and Economic Analysis
June 5, 2008
Page 4

other federal agencies, state agencies, and local governments, regardless of whether these costs are in any way attributable to critical habitat designation.  Draft Economic Analysis at 16:22.

Thus, costs that the Service knows are due "solely" to the jeopardy standard, species listing, or some other cause not attributable to critical habitat designation cannot be attributed to designation and must, instead, be included within the baseline.

*2.  The Draft Economic Analysis Does Not Properly Account for Benefits of Designation*

The ESA requires the Service to consider the "economic impact" of proposed critical habitat designations.  16 U.S.C. § 1533(b)(2).  "Economic impact," as it is generally understood, includes both costs and benefits of a proposed action.  *See Sierra Club v. Sigler*, 695 F.2d 957, 976 (5th Cir. 1983) (invalidating an EIS under NEPA because an agency quantified the benefits of a project but, when it came to discussing costs, "pleaded a lack of data" and provided "only cursory and conclusory discussion"); *see also* OMB Guidelines 2003 at 5517 ("You must measure total benefits and costs against the same baseline").

The draft economic analysis, however, rejects any meaningful consideration or accounting of the benefits of critical habitat designation.  For example, designation may result in increased protection of wetland habitat essential to the conservation of the Hine's emerald dragonfly.  This protection can produce ancillary economic benefits, such as protecting ecosystem services, increasing recreational and wildlife visitation opportunities, reducing flood risks, concurrent conservation of other species, enhancing groundwater recharge, and even higher property values.  There are accepted methods for monetizing these benefits, yet the draft economic analysis dismisses any notion of attempting to quantify the ancillary benefits of critical habitat designation.  Draft Economic Analysis at 18:28-29 ("Ancillary benefits that affect markets are not anticipated in this case and therefore are not quantified.")

There is no basis for excluding all such benefits from the scope of the analysis.  On the contrary, some ancillary costs are reasonably foreseeable and methods for quantifying them are readily available.  While it may be true that it is "often difficult to evaluate the ancillary benefits" of designation (Draft Economic Analysis at 18:29), that difficulty does not absolve the Service of the obligation to include these costs in the analysis where they are quantifiable.  *See* OMB Guidelines 2003 at 5518 (agencies should monetize costs and benefits wherever possible; where impossible, agency should "explain why and present all available quantitative information.")

In many cases, the benefits of critical habitat designation appear to be less speculative than the costs and cost assumptions included in the analysis.  For example, the economic analysis considers "regulatory impact" costs that "occur in anticipation of having to modify project parameters" (17:24); considers "stigma" effects on property values associated with perceptions

Hine's Emerald Dragonfly Draft Critical Habitat and Economic Analysis
June 5, 2008
Page 5

of the negative effect of critical habitat (17:25); assumes that critical habitat designation will trigger other conservation efforts and costs by state and local agencies (16:22), and fails to discount land use costs of the designation, assuming that the full impact on property values occurs at the time of designation (25:47). In these and other instances, the analysis attempts to quantify costs that are notoriously speculative or even intractable, yet the analysis fails to encompass *benefits* that are less speculative. The lack of a balanced, even-handed approach is precisely what troubled the Fifth Circuit in *Sierra Club v. Sigler* and led it to invalidate an environmental impact statement . 695 F.2d at 976.

<u>The Draft Economic Analysis Does Not Justify Excluding Any Habitat</u>

Section 4(b)(2) of the ESA provides that the Service may exclude an area from designation if it determines that "the benefits of such exclusion outweigh the benefits of specifying such area as part of the critical habitat." Based on the flaws in the draft economic analysis, the analysis does not provide an adequate basis for determining the costs and benefits of critical habitat designation for the Hine's emerald dragonfly. Accordingly, the draft economic analysis is not an adequate foundation for determining whether the benefits of excluding certain areas from the critical habitat designation outweigh the benefits of including these areas.

Sincerely,


/s/ John Buse
John Buse
Staff Attorney
Center for Biological Diversity

Attachment:  Comments on the Draft Economic Analysis of Critical Habitat Designation for the     Hine's Emerald Dragonfly prepared by GreenFire Consulting Group, LLC

# Exhibit C

to June 5, 2008 Declaration of Aaron M. Bloom in Support
of Venue in the Northern District of Illinois

IEc

ECONOMIC ANALYSIS OF
CRITICAL HABITAT
DESIGNATION FOR THE
HINE'S EMERALD DRAGONFLY

Draft  |  January 25, 2007

prepared for:

Division of Economics

U.S. Fish and Wildlife Service

4401 N. Fairfax Drive

Arlington, VA 22203


prepared by:

Industrial Economics, Incorporated

2067 Massachusetts Avenue

Cambridge, MA 02140

Draft – January 25, 2007

## EXECUTIVE SUMMARY

1.   The purpose of this report is to identify and analyze the potential economic impacts associated with the proposed critical habitat designation for the Hine's Emerald Dragonfly (*Somatochlora hineana*, hereafter referred to as the dragonfly).  This report was prepared by Industrial Economics, Incorporated (IEc), under contract to the U.S. Fish and Wildlife Service's (Service) Division of Economics.

2.   The Service has identified 27,490 acres in Illinois, Michigan, Missouri, and Wisconsin as potential critical habitat for the dragonfly.[1]  Of this acreage, the Service proposes to exclude from critical habitat designation approximately 14,269 acres, comprising two units in Michigan and all proposed units in Missouri.  In the remainder of this report, the entire 27,490 acres are referred to as the study area.

3.   Most of the study area is located in wetlands.  Exhibits ES-8 and ES-9 at the end of the executive summary show the location of the Illinois units, which have the highest forecast costs.  Appendix F contains full maps for the entire study area.  The units proposed for designation are comprised of a mix of public and private lands, which account for 79 percent and 21 percent of the total area, respectively.  Public land consists of Federal (e.g., U.S. Forest Service (USFS)), State (e.g., Wisconsin Department of Natural Resources) and local (e.g., Will County Forest Preserve District) land.  Ninety-six percent of the land considered for exclusion is owned by the Federal government.

4.   This analysis quantifies economic impacts of dragonfly conservation efforts associated with the following activities: (1) development, (2) water use, (3) utility and infrastructure maintenance, (4) road and railway use, (5) species management, and (6) recreation.  The Key Findings are highlighted below.  Exhibit ES-1 summarizes the quantitative results of this analysis.  The relative magnitude of impacts to each type of affected activity are shown in Exhibits ES-2 through ES-4

---

[1] For a description of the species and the primary constituent elements of its habitat, see the proposed rule.  IEc and the Service have revised the acreage of Wisconsin Unit 1 from 503 acres (as reported in 71 FR 42442) to 157 acres, which reduces the total acreage reported in 71 FR 42442 from 27,689 acres to 27,343 acres.  An additional unit, Wisconsin unit 11, was added since the publication of the proposed rule and brings the total acreage to 27,490.

## KEY FINDINGS

**Total future impacts:**  The draft economic analysis forecasts future costs associated with conservation efforts for the dragonfly in areas proposed for designation ranging from $16.8 million to $46.7 million (undiscounted) over the next 20 years.  The present value of these impacts, applying a three percent discount rate, is $13.4 million to $34.6 million ($0.9 million to $2.3 million on an annualized basis); or $10.7 million to $25.3 million, applying a seven percent discount rate ($1.0 million to $2.4 million on an annualized basis).  For past costs, see Appendix B.

**Quantified Impacts:**  Because the types of conservation measures that will be implemented to mitigate threats posed by quarrying, ground and surface water depletion, and vehicle strikes are uncertain, this analysis presents a range of impact estimates.  The high estimate assume that no quarrying will be allowed, water depletion will be mitigated by the construction of deep aquifer (municipal) wells, and speed limits will be imposed on local roads and railroads to reduce vehicular impacts.  These activities account for 96 percent of the high total cost estimates.  The low estimate assumes that quarrying is allowed as part of a Habitat Conservation Plan (HCP) and that neither deep aquifer wells nor vehicle slowing are instituted.  Lost property values due to foregone residential development and expected expenditures to institute the HCP account for 77 percent of low total cost estimates.

Development:  The cost of mitigating direct development threats, including residential, commercial (except quarrying), utilities, and roadway construction, are estimated to be  $4.0 million (undiscounted) based on current land values.  Quarrying mitigation costs are estimated to be $8.0 million.  Preparation and implementation of the HCP is estimated to cost an additional $1.1 million (undiscounted, low estimate).  If quarrying is not allowed within the HCP, foregone quarry development values in Illinois Unit 2 are an estimated $17.6 million (undiscounted, high estimate).

Water use:  Water related administration costs are expected to be $29,000 (undiscounted, low estimate).  Costs of obtaining alternate sources of water are estimated to be  $7.0 million if water depletion is mitigated by new, deep aquifer wells (undiscounted, high estimate).

Utility and road maintenance:  Costs are estimated for extra care that must be taken to protect against habitat degradation during routine maintenance; the majority of the $1.5 million (undiscounted) costs are for this extra care in Illinois Units 1-5 and 7.

Road and railway use:  The low estimate of $1.8 million (undiscounted) primarily results from measures to restore degraded habitat and mitigate for the hydraulic pumping of sediment into habitat.  The high estimate of $15.0 million (undiscounted) would result from vehicle slowing measures to prevent vehicular collisions with adult dragonflies.

Species management:  Activities required to manage invasive species, and other specific biological threats (feral hogs and beaver dams), are estimated to be $474,000 (undiscounted) and are primarily for enclosure construction around habitat units.

Recreation:  Habitat protection costs related to recreation activities are estimated to be $19,000.

**Critical Habitat Units with the Highest Impacts:**  The units with the largest projected impacts (low estimate, undiscounted dollars) are Illinois Units 2, 4, and 1, which together account for approximately 82 percent of the total costs.  The units with the largest projected impacts (high estimate, undiscounted dollars) are Illinois Units 2, 7, and 1, which together account for approximately 86 percent of the total costs.   (see Exhibit ES-8 and ES-9).  These units contain activities potentially impacted by:

- Illinois Unit 2 contains a quarry owned by Material Services Corporation; quarrying mitigation will generate substantial costs.   Higher costs will be incurred if quarrying is prohibited  (see Chapter 2).

- Illinois Units 1 and 2 contain a railroad owned by MidWest Generation, and Com Ed power lines, which will incur high costs for maintenance and upgrading (see Chapters 4 and 5).

- Illinois Unit 4 is bisected by the new Illinois Tollway Authority interstate 355 extension, where substantial conservation costs have been and will continue to be incurred (see Chapter 2).

- Illinois Unit 7 contains a heavily traveled county road and a passenger rail line.  The costs of the lost value of time due to vehicle slowing (speed limits) would be substantial.

Draft - January 25, 2007

**EXHIBIT ES-1   SUMMARY OF FUTURE IMPACTS (2007 - 2026)**

| CATEGORY | UNDISCOUNTED | | 3% DISCOUNT RATE | | 7% DISCOUNT RATE | |
|---|---|---|---|---|---|---|
| | LOW | HIGH | LOW | HIGH | LOW | HIGH |
| **Proposed for Designation** | | | | | | |
| Total Economic Impacts | $16,847,000 | $46,700,000 | $13,356,000 | $34,637,000 | $10,650,000 | $25,348,000 |
| Annualized Impacts | $842,000 | $2,335,000 | $898,000 | $2,328,000 | $1,005,000 | $2,393,000 |
| **Considered for Exclusion** | | | | | | |
| Total Economic Impacts | $1,209,000 | | $933,000 | | $702,000 | |
| Annualized Impacts | $60,000 | | $63,000 | | $66,000 | |

**EXHIBIT ES-2   RELATIVE MAGNITUDE OF FUTURE IMPACTS IN PROPOSED CRITICAL HABITAT (UNDISCOUNTED)**

LOW-END



HIGH-END



Draft - January 25, 2007

**EXHIBIT ES-3    RELATIVE MAGNITUDE OF FUTURE IMPACTS IN PROPOSED CRITICAL HABITAT (DISCOUNTED AT THREE PERCENT)**

LOW-END                                HIGH-END



Source:  IEc analysis.

**EXHIBIT ES-4    RELATIVE MAGNITUDE OF FUTURE IMPACTS IN PROPOSED CRITICAL HABITAT (DISCOUNTED AT SEVEN PERCENT)**

LOW-END                                HIGH-END

Source:  IEc analysis.

5.    Exhibit ES-5 ranks the units proposed for critical habitat designation in order of magnitude of expected impact under the low-end estimate.  Exhibit ES-6 ranks the units in order of magnitude of expected impact under the high-end estimate.  For more detailed information regarding present value and annualized impacts in each unit, see Exhibit ES-7 (for units where high and low estimates are not applicable, a single cost estimate is provided).  Exhibits ES-8 and ES-9 follow; these maps show the units with the largest impacts for the low and high estimates, respectively.  Past and future estimated impacts by unit and activity are provided in Appendices B and C, respectively.

Draft – January 25, 2007

**EXHIBIT ES-5   UNITS RANKED BY LEVEL OF IMPACT (LOW-END ESTIMATE)**

| UNDISCOUNTED | | | 3 PERCENT | | | 7 PERCENT | | |
|---|---|---|---|---|---|---|---|---|
| UNIT | IMPACTS | % OF TOTAL | UNIT | IMPACTS | % OF TOTAL | UNIT | IMPACTS | % OF TOTAL |
| IL2 | $9,586,000 | 56.90% | IL2 | $6,670,000 | 49.94% | IL2 | $4,526,000 | 42.50% |
| IL4 | $2,515,000 | 14.93% | IL4 | $2,360,000 | 17.67% | IL4 | $2,195,000 | 20.61% |
| IL1 | $1,571,000 | 9.33% | IL1 | $1,387,000 | 10.39% | IL1 | $1,199,000 | 11.26% |
| WI5 | $1,023,000 | 6.07% | WI5 | $1,009,000 | 7.56% | WI5 | $999,000 | 9.38% |
| WI4 | $524,000 | 3.11% | WI4 | $489,000 | 3.66% | WI4 | $460,000 | 4.32% |
| IL3 | $439,000 | 2.61% | IL3 | $393,000 | 2.94% | IL7 | $349,000 | 3.28% |
| IL7 | $433,000 | 2.57% | IL7 | $390,000 | 2.92% | IL3 | $349,000 | 3.27% |
| MI6 | $170,000 | 1.01% | MI6 | $164,000 | 1.23% | MI6 | $160,000 | 1.50% |
| WI2 | $138,000 | 0.82% | IL5 | $104,000 | 0.78% | WI1 | $94,000 | 0.88% |
| IL5 | $129,000 | 0.76% | WI2 | $103,000 | 0.77% | IL5 | $81,000 | 0.76% |
| WI1 | $94,000 | 0.56% | WI1 | $94,000 | 0.70% | WI2 | $74,000 | 0.69% |
| MI5 | $67,000 | 0.40% | MI5 | $61,000 | 0.46% | MI5 | $57,000 | 0.53% |
| WI10 | $57,000 | 0.34% | MI3 | $45,000 | 0.34% | MI3 | $41,000 | 0.38% |
| MI3 | $51,000 | 0.30% | MI4 | $45,000 | 0.34% | MI4 | $40,000 | 0.38% |
| MI4 | $50,000 | 0.30% | WI10 | $41,000 | 0.31% | WI10 | $28,000 | 0.26% |
| IL6 | $0 | 0.00% | IL6 | $0 | 0.00% | IL6 | $0 | 0.00% |
| WI3 | $0 | 0.00% | WI3 | $0 | 0.00% | WI3 | $0 | 0.00% |
| WI6 | $0 | 0.00% | WI6 | $0 | 0.00% | WI6 | $0 | 0.00% |
| WI7 | $0 | 0.00% | WI7 | $0 | 0.00% | WI7 | $0 | 0.00% |
| WI8 | $0 | 0.00% | WI8 | $0 | 0.00% | WI8 | $0 | 0.00% |
| WI9 | $0 | 0.00% | WI9 | $0 | 0.00% | WI9 | $0 | 0.00% |
| WI 11 | $0 | 0.00% | WI 11 | $0 | 0.00% | WI 11 | $0 | 0.00% |
| Total | $16,847,000 | 100.00% | Total | $13,356,000 | 100.00% | Total | $10,650,000 | 100.00% |

Notes:  Totals may not sum due to rounding.

Draft – January 25, 2007

EXHIBIT ES-6   UNITS RANKED BY LEVEL OF IMPACT (HIGH-END ESTIMATE)

| UNDISCOUNTED | | | 3 PERCENT | | | 7 PERCENT | | |
|---|---|---|---|---|---|---|---|---|
| UNIT | IMPACTS | % OF TOTAL | UNIT | IMPACTS | % OF TOTAL | UNIT | IMPACTS | % OF TOTAL |
| IL2 | $20,803,000 | 44.55% | IL2 | $13,673,000 | 39.47% | IL7 | IL7 | $9,307,000 |
| IL7 | $16,238,000 | 34.77% | IL7 | $12,500,000 | 36.09% | IL2 | IL2 | $8,662,000 |
| IL1 | $3,171,000 | 6.79% | IL1 | $2,613,000 | 7.54% | IL4 | IL4 | $2,365,000 |
| IL4 | $2,815,000 | 6.03% | IL4 | $2,590,000 | 7.48% | IL1 | IL1 | $2,106,000 |
| WI5 | $1,582,000 | 3.39% | WI5 | $1,438,000 | 4.15% | WI5 | WI5 | $1,316,000 |
| IL3 | $739,000 | 1.58% | IL3 | $622,000 | 1.80% | IL3 | IL3 | $519,000 |
| WI4 | $595,000 | 1.27% | WI4 | $544,000 | 1.57% | WI4 | WI4 | $500,000 |
| MI6 | $170,000 | 0.36% | MI6 | $164,000 | 0.47% | WI1 | MI6 | $160,000 |
| WI2 | $138,000 | 0.30% | IL5 | $104,000 | 0.30% | IL5 | WI1 | $94,000 |
| IL5 | $129,000 | 0.28% | WI2 | $103,000 | 0.30% | WI2 | IL5 | $81,000 |
| WI1 | $94,000 | 0.20% | WI1 | $94,000 | 0.27% | MI5 | WI2 | $74,000 |
| MI5 | $67,000 | 0.14% | MI5 | $61,000 | 0.18% | MI3 | MI5 | $57,000 |
| WI10 | $57,000 | 0.12% | MI3 | $45,000 | 0.13% | MI4 | MI3 | $41,000 |
| MI3 | $51,000 | 0.11% | MI4 | $45,000 | 0.13% | WI10 | MI4 | $40,000 |
| MI4 | $50,000 | 0.11% | WI10 | $41,000 | 0.12% | MI6 | WI10 | $28,000 |
| IL6 | $0 | 0.00% | IL6 | $0 | 0.00% | IL6 | IL6 | $0 |
| WI3 | $0 | 0.00% | WI3 | $0 | 0.00% | WI3 | WI3 | $0 |
| WI6 | $0 | 0.00% | WI6 | $0 | 0.00% | WI6 | WI6 | $0 |
| WI7 | $0 | 0.00% | WI7 | $0 | 0.00% | WI7 | WI7 | $0 |
| WI8 | $0 | 0.00% | WI8 | $0 | 0.00% | WI8 | WI8 | $0 |
| WI9 | $0 | 0.00% | WI9 | $0 | 0.00% | WI9 | WI9 | $0 |
| WI 11 | $0 | 0.00% | WI 11 | $0 | 0.00% | WI 11 | WI 11 | $0 |
| Total | $46,700,000 | 100.00% | Total | $34,637,000 | 100.00% | Total | Total | $25,348,000 |

Notes:  Totals may not sum due to rounding.